Filed 12/11/13  P. v. Soto CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ABEL DOMINGUEZ SOTO,<br><br>    Defendant and Appellant. | F064437<br><br>(Kern Super. Ct. No. BF135034A)<br><br>**MODIFICATION OF OPINION ON DENIAL OF REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion herein filed on November 26, 2013, be modified as follows:

1.     Strike the first full paragraph on page 10, beginning with the phrase "As for Soto's claim …" and insert the following paragraph in its place:

> As for Soto's claim that he proceeded with a green light, that claim is based solely on the statement of Delgado,[1] who had been drinking and was texting while in the car before the collision, that she had noticed the light was green for their direction of traffic when they exited the freeway and it was only a short distance from the exit to where the collision

---

[1]     Soto contends that Mickelson also testified the students were crossing on a red light.  Mickelson clarified, however, that although he had talked to a lot of people since the accident, his "recollection is really foggy.  I don't really remember anything except for what people have told me."  Mickelson affirmed at trial what he told a police officer the evening of the accident; he could not remember anything after walking out the door of the pizza parlor until he woke up in the ambulance.

occurred.  Delgado also indicated, however, that when she purportedly saw the green light, she also saw the pedestrians.

This modification does not effect a change in the judgment.

The petition for rehearing is denied.

_____

Kane, Acting P.J.

WE CONCUR:


_____

Franson, J.


_____

Oakley, J.*

---

*      Judge of the Madera Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>ABEL DOMINGUEZ SOTO,<br><br>    Defendant and Appellant. | F064437<br><br>(Super. Ct. No. BF135034A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Abel Dominguez Soto was convicted of driving with a suspended driver's license, failing to stop at the scene of a vehicular accident, and driving under the influence of alcohol causing injury. He contends the trial court erred prejudicially in failing to instruct the jury sua sponte on the defense of accident and alternatively, defense counsel rendered ineffective assistance by failing to request the instruction. Soto further contends the evidence is insufficient to support his conviction for driving under the influence of alcohol causing injury. We reject his contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

On November 20, 2010, the Redlands East Valley High School marching band was in Bakersfield for a band competition. After the day's competition ended, the band members went for late night pizza at a location across the street from their hotel.

That same evening, Soto and his friends Fabian Garcia and Crystal Delgado were drinking at the home of Soto's parents in Shafter. After an hour or two, Soto, Garcia, and Delgado decided to head to Bakersfield; Garcia drove the three in his gray Toyota Corolla. Soto gave them directions to a bar, where they arrived late at night.

By the time they arrived at the lounge, Soto had an odor of alcohol about him; Garcia was tired and "fading in and out" from his alcohol consumption. Soto bought two pitchers of beer, which he shared. There is a bar videotape that shows Soto, Garcia, and Delgado in the bar that evening.

When the three friends left the bar, Garcia was too intoxicated to drive, so Soto drove instead while Garcia lay in the back seat, where he passed out. Soto smelled of alcohol at the time he got behind the wheel of the car. Soto drove to another bar, but it was closing, so they decided to head home.

About this same time, the band members were leaving the pizza parlor. They all congregated at the corner where there was a crosswalk and signal; they crossed in groups.

When they walked out of the pizza parlor, it was sprinkling and around 2:00 a.m. There were street lights lighting the area.

The first group of students began crossing the street in the crosswalk after waiting for the signal for pedestrians to cross. The band started crossing when there was a green light and a pedestrian signal indicating they could cross. One student, Clayton Meiners, estimated there were around 16 students in the first group. Before the group of students could make it across the street to the hotel side, the pedestrian light began to flash red.

Student Summer Dietsche, who was at the front of the first group crossing, heard a sound, turned to look back, and saw her "friend Hannah flying through the air." Meiners, who was walking further back in the group than Hannah Richey, had been watching oncoming traffic lanes. He saw a car coming that "did not look like it was going to stop" and he saw it strike Richey and another student, Zachery Mickelson. Richey was propelled over the car; Mickelson went down, but then got up and walked to the median.

After the impact, there was glass and pieces of the car strewn in the street. Meiners thought the driver of the car "slowed down a little" after the impact, but then "continued as if nothing happened." The car did not slow down at all before the impact.

Two witnesses, Arlene Armenta and Vanea Hopper, stated that the car that struck the students had been going at a high rate of speed and had run a red light. Hopper stated the car was driving in the middle of the street, straddling two lanes. After the impact, the car continued without stopping.

Officer Santiago Baltazar of the Bakersfield Police Department arrived at the scene around 2:30 a.m. It was raining hard at that time. He found a group of people surrounding Richey, who was lying in the roadway; Mickelson was lying on the center median. Baltazar found a driver's side mirror and a plastic headlight lens at the scene. Richey and Mickelson were transported to Kern Medical Center for treatment.

About five miles from the site of the collision, Lisa Andrew saw a car driving too slowly after turning onto Goesling Avenue. Mark Etcheverry lives on Goesling Avenue.

When he returned home from work, he saw a Toyota Corolla parked on the street; the car appeared to have blood and blond hair on the windshield. Etcheverry called the police.

Police inspected the car and found it had damaged headlamps, a large dent in the hood, and damage to the windshield on the driver's side. Blond human hairs were on the windshield. Pieces of broken glass were found on the driver's seat, center console, and floorboard. Blood was on the interior driver's door handle.

At some point in the night, Garcia woke up to find Soto driving his car. Soto was "scared and worried" and said he had hit someone with the car. After Soto parked the car in a residential area, the three took off. Soto called for a taxi.

The taxi picked them up around 3:00 a.m. and drove them to Shafter, where Garcia was dropped off first. Garcia reported his car stolen, because Soto offered to buy him a new windshield if he did so.

The taxi then drove Delgado and Soto to Soto's house. After they cleaned off the blood and glass, Soto drove Delgado home. Soto later told Delgado to tell the truth "except for the alcohol." Soto did not want Delgado to tell anyone he had been drinking.

Richey had multiple skull fractures, bleeding in her brain, facial lacerations, abrasions on her extremities, two fractured vertebrae in her neck and a broken leg. She received more than 200 stitches in her head and was unable to walk without crutches for nearly six months. Mickelson suffered lacerations on his skull and cuts on his wrist. He received 42 stitches on his forehead.

Officer Christopher Bagby investigated the case. On November 22, 2010, he spoke with Soto, who gave a statement accepting responsibility for the collision. Soto had lacerations on his left hand. Bagby seized Soto's cell phone. One message sent from the phone at 12:46 p.m. on November 21, 2010, read "I think I was alil gawwwn lastnight."

Bagby spoke with Delgado on November 22 and 23, and December 29, 2010. Delgado lied when she told Bagby that neither she nor Soto had anything to drink that

night. When Garcia was arrested, he stated Soto had been driving that night at the time of the collision.

Soto was charged in count 1 with driving under the influence of alcohol causing injury, in counts 2 and 3 with failing to stop at the scene of a vehicular accident, and in count 4 with misdemeanor driving with a suspended license. The information also alleged that Soto caused great bodily injury to more than one victim; as to count 1, had suffered three prior convictions for related offenses; and as to count 4, had suffered four prior convictions for related offenses.

Soto pled guilty to the count 4 offense and admitted the four prior convictions appended to that count. He pled not guilty to the remaining charges and denied the other special allegations.

On November 22, 2011, the People dismissed the special allegation of multiple victims appended to count 1. The jury returned guilty verdicts on counts 1, 2, and 3. Also, the jury found true two special allegations that Soto had personally inflicted great bodily injury in committing the count 1 offense. The trial court found true that Soto had suffered three prior convictions for offenses related to count 1. At sentencing, the trial court imposed a total term of 10 years, plus various fines.

## DISCUSSION

Soto raises two challenges to his convictions. First, he contends the evidence is insufficient to sustain the count 1 conviction because the evidence is insufficient to establish that he drove while under the influence of alcohol. Second, he contends the trial court erred in not instructing the jury sua sponte on the defense of accident; alternatively, defense counsel was ineffective for failing to request the instruction.

I.      **Sufficiency of the Evidence**

Soto contends the evidence is insufficient to sustain the count 1 conviction because the evidence does not establish that he was under the influence of alcohol at the time of the collision causing injuries. We disagree.

To prove the count 1 conviction for violating Vehicle Code section 23153, the prosecution had to prove four elements: (1) excessive alcohol intake by the defendant; (2) driving a vehicle; (3) committing an act which violates the law or neglecting a duty imposed by law; and (4) causing bodily injury to another person. (*In re F.H.* (2011) 192 Cal.App.4th 1465, 1469.) Soto challenges only the sufficiency of the evidence establishing the first element - intoxication.

The standard of review is well settled: "In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 317-320.) The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) '"Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. '" If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]'" (*Id.* at pp. 792-793.)" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

Substantial evidence includes circumstantial evidence and the reasonable inferences this evidence allows. (*People v. Rodriguez, supra*, 20 Cal.4th at p. 11; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 930.) There is abundant evidence that Soto was drinking alcohol and under the influence of alcohol at the time of the collision. Soto drank alcoholic drinks at his parents' home in Shafter before heading to Bakersfield, and he had a noticeable odor of alcohol about him when he left their house. At the bar in Bakersfield, Soto bought pitchers of beer and drank beer; he smelled of alcohol when the three left the bar. Soto was driving at a high rate of speed, drove down the roadway straddling two lanes and ran a red light before hitting pedestrians crossing in a marked crosswalk. The car behind Soto had no trouble seeing the red light or the pedestrians. Soto asked Delgado to lie to the authorities regarding his drinking that night and not to tell them about "the alcohol."

This evidence establishes that multiple people observed Soto drinking throughout the evening before the accident and that he smelled of alcohol shortly before the collision. Witnesses saw him driving in an erratic manner—straddling two lanes instead of driving inside one lane, driving at an excessive speed, running a red light, and failing to stop for the pedestrians in the marked crosswalk who were crossing with the light, even though the driver behind him could clearly see the pedestrians and the red light. The testimony of a single witness is sufficient to prove a disputed fact unless the testimony is inherently improbable or physically impossible, which is not the case here. (*People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. Scott* (1978) 21 Cal.3d 284, 296.)

Even if there were other evidence that might support a contrary conclusion, if the circumstances reasonably justify the fact finder's determination, reversal of the judgment is not warranted. (*In re George T.* (2004) 33 Cal.4th 620, 631.) "We may reverse for lack of substantial evidence only if "'upon no hypothesis whatever is there sufficient

substantial evidence to support"' the conviction or the enhancement. [Citation.]"
(*People v. Garcia* (2007) 153 Cal.App.4th 1499, 1508.)

The evidence is substantial that Soto's consumption of alcohol had impaired his
ability to operate a motor vehicle in a prudent manner. (*People v. McNeal* (2009) 46
Cal.4th 1183, 1192-1193; *People v. Minor* (1994) 28 Cal.App.4th 431, 437-438.)

## II.      Accident Instruction

Soto contends the trial court erred prejudicially in failing to instruct the jury
regarding the defense of accident, specifically with CALCRIM No. 3404, because "that
was clearly the defense, [he] was driving in a lawful manner, through a green light,"
when he struck the pedestrians. We disagree.

The defense of accident or misfortune is based on Penal Code section 26, which
provides, in relevant part: "All persons are capable of committing crimes except those
belonging to the following classes: [¶] … [¶] Five—Persons who committed the act or
made the omission charged through misfortune or by accident, when it appears that there
was no evil design, intention, or culpable negligence." This defense "is a claim that the
defendant acted without forming the mental state necessary to make his actions a crime."
(*People v. Gonzales* (1999) 74 Cal.App.4th 382, 390.) "'When a person commits an act
or makes an omission through misfortune or accident under circumstances that show …
[no] criminal negligence, he does not thereby commit a crime.'" (*People v. Lara* (1996)
44 Cal.App.4th 102, 110, fn. 2.)

We first reject Soto's contention that the trial court had a sua sponte duty to
instruct with CALCRIM No. 3404. The California Supreme Court has held that
CALCRIM No. 3404 is a pinpoint instruction that must be affirmatively requested by the
defense; there is no sua sponte duty to issue the instruction. (*People v. Anderson* (2011)
51 Cal.4th 989, 996-997; *People v. Lawson* (2013) 215 Cal.App.4th 108, 118.)

Soto alternatively argues that defense counsel was ineffective for failing to request
the instruction. Again, we disagree.

A claim of ineffective assistance of counsel in violation of the Sixth Amendment entails deficient performance under an objective standard of professional reasonableness and prejudice. (*People v. Huggins* (2006) 38 Cal.4th 175, 248.) Prejudice is assessed under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (See *People v. Randle* (2005) 35 Cal.4th 987, 1003 [*Watson* standard applies to instructional error on defense].) "A court need not 'address both components of the inquiry if the defendant makes an insufficient showing on one.' [Citation.] 'Defendant bears the burden of proving ineffective assistance of counsel.' [Citation.]" (*People v. Camino* (2010) 188 Cal.App.4th 1359, 1377.) Here, Soto has failed to meet his burden.

We next take issue with Soto's claim that he was driving in a lawful manner and had a green light when he struck the pedestrians, thus entitling him to the accident instruction. As set forth in part I above, witnesses testified that Soto was driving down the middle of two lanes, driving at an excessive speed, driving under the influence of alcohol, and that he ran a red light after which he struck two pedestrians in a marked crosswalk. He also was driving with a suspended license at the time of the collision. These facts establish that Soto was not driving in a lawful manner and acted with culpable negligence, which precludes an accident defense. (Pen. Code, § 26, subd. Five.) "[W]ithout 'due caution and circumspection'" is the equivalent of criminal negligence. (*People v. Penny* (1955) 44 Cal.2d 861, 869.)

Additionally, assuming arguendo that the darkness and rain hampered Soto's visibility, albeit not the visibility of the car behind him carrying Armenta and Hopper, Soto still failed to act with due caution and circumspection. He was driving at an excessive rate of speed, straddling two lanes, and his ability to operate a motor vehicle in a prudent manner was impaired by alcohol. These were not the actions of an ordinarily prudent person under the conditions Soto claims hampered visibility. "Criminal negligence … is a standard for determining when an act may be punished under the penal law because it is such a departure from what would be the conduct of an ordinarily

prudent or careful person under the same circumstances." (*People v. Valdez* (2002) 27 Cal.4th 778, 789-790.)

As for Soto's claim that he proceeded with a green light, that claim is based solely on the statement of Delgado, who had been drinking and was texting while in the car before the collision, that she had noticed the light was green for their direction of traffic when they exited the freeway and it was only a short distance from the exit to where the collision occurred. Delgado also indicated, however, that when she purportedly saw the green light, she also saw the pedestrians.

Thus, Delgado, Armenta, and Hopper could all see pedestrians under the existing conditions of darkness and light rain. Soto had a duty under Vehicle Code section 21950, subdivision (a), to yield the right of way to pedestrians in a marked crosswalk. Subdivision (c) of this code section also requires:

> "The driver of a vehicle approaching a pedestrian within any marked or unmarked crosswalk shall exercise all due care and shall reduce the speed of the vehicle or take any other action relating to the operation of the vehicle as necessary to safeguard the safety of the pedestrian."

A pedestrian does not have a duty to continuously look in the direction of potential oncoming traffic. (*La Manna v. Stewart* (1975) 13 Cal.3d 413, 428-429.) Again exhibiting culpable negligence, Soto failed to comply with Vehicle Code section 21950.

There are any number of bases upon which the jury could have found Soto failed to exercise due care and caution, and violated traffic laws: excessive speed (Veh. Code, § 22349, failure to obey maximum speed); straddling two lanes (Veh. Code, § 23103, reckless driving, or Veh. Code, §§ 21650 & 21659, failure to remain in own lane); running a red light (Veh. Code, §§ 21453 & 21462), or failing to yield to pedestrians in a marked crosswalk (Veh. Code § 21950). The evidence supports any and all of these Vehicle Code violations by Soto.

Soto alleges prejudice, however, because the jury at one point sent a note stating they were deadlocked on count 1. Before the trial court could respond to the note,

however, the jury sent a second note stating they had reopened discussion on count 1 after reviewing the text messages. The jury then asked to review the videos from the bar where Soto, Garcia, and Delgado had been drinking. After this, the jury arrived at its verdict on count 1.

The jurors were instructed that in order to find Soto guilty of count 1, they had to find that he acted with general criminal intent. Soto's intoxication does not negate general criminal intent. (*People v. Hood* (1969) 1 Cal.3d 444, 455-459.) After reviewing the evidence and continuing to deliberate, it follows that the jury rejected the notion that Soto's actions were accidental. (*People v. Jones* (1991) 234 Cal.App.3d 1303, 1314-1316.)

The evidence presented at Soto's trial did not warrant an accident instruction. Defense counsel is not ineffective for failing to request an unwarranted instruction. (*People v. Gray* (2005) 37 Cal.4th 168, 220-221.) Regardless, there is no prejudice because the issue was resolved adversely to Soto under other instructions properly given. (*People v. Wright* (2006) 40 Cal.4th 81, 98-99; *People v. Sojka* (2011) 196 Cal.App.4th 733, 738.) Consequently, prejudice has not been established because it is not reasonably probable a result more favorable to Soto would have been achieved if the instruction had been given. (*People v. Wilson* (2008) 44 Cal.4th 758, 805; *People v. Corning* (1983) 146 Cal.App.3d 83, 89.)

## **DISPOSITION**

The judgment is affirmed.

_____
Kane, Acting P.J.

WE CONCUR:


_____
Franson, J.


_____
Oakley, J.*

---

*       Judge of the Madera Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.