[Crim. No. 13877. Fourth Dist., Div. One. Aug. 16, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY GENE CORNING, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Jeffrey J. Stuetz, Deputy State Public Defender, and Steven M. Brown for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Michael D. Wellington and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WIENER, J.**—Roy Gene Corning appeals the judgment entered on jury verdicts convicting him of the second degree murder of Frank Brooks (Pen. Code, §§ 187, 189)[1] and of assault with a deadly weapon on his estranged

---

[1] All statutory references are to the Penal Code.

wife Grace (former § 245, subd. (a)). The jury also found the gun use enhancements on both counts (§ 12022.5) and the great bodily injury enhancement (§ 12022.7) on the aggravated assault[2] count to be true. We reject Corning's contentions of instructional and sentencing errors and affirm the judgment.

## I

At trial the prosecutor successfully portrayed Corning as jealous and angry with Brooks because of Brooks' alleged affair with Grace. On the morning of the murder Corning sat at the kitchen counter in Grace's house facing the front door waiting for Brooks with his .45 caliber handgun hidden behind an upright greeting card. When Brooks arrived Corning asked him to repeat what he had told him earlier about his sexual relationship with Grace. Stunned by the accusations, Brooks said he did not know what Corning was talking about. Grace's roommate, Susan Phillips, seated in the nearby living room, did not see any weapons on Brooks but saw Corning place his hand on the .45. Momentarily turning her attention away from the escalating argument, she heard two or three shots. Looking back, she saw Corning point the gun at Grace who had just entered the room. Corning then shot Grace once in each leg. Corning threw a shiny object across the room, got up and went outside. He opened the driver's door of Brooks' car and picked up Brooks' .32 caliber handgun from the floorboards. Brooks' girl friend, Catherine DePonte, asked Corning the whereabouts of Brooks. Corning took the .32 inside the residence with DePonte following and threw the gun into the corner of the room. Grace, pregnant with Corning's child, told Corning to get her keys, take her van and get out. Corning later surrendered to the police.

Corning had a different explanation of the events. He cast the shooting of Brooks as self-defense and that of Grace as accidental. He testified Rich Harrod had telephoned him that Brooks was armed and on his way to Grace's house. When Corning sat at the kitchen counter the .45 was in plain sight. Brooks first accused Corning of having him thrown out of the house where he was living. Brooks then initiated the subject of Grace and his sexual relationship with her. Corning remained silent. When Brooks then turned his back, Corning reached for his .45. After Brooks reached into his belt area Corning saw him pull a gun out and point it at him. In self-defense Corning fired his .45. Seeing something out of the corner of his eye, Corning turned but lost his footing and hit his hand against the counter. The .45 accidentally discharged three or four times, striking Grace in the legs.

---

[2]For convenience we refer to Corning's assault with a deadly weapon offense as "aggravated assault." (See *People* v. *Yeats* (1977) 66 Cal.App.3d 874, 878 [136 Cal.Rptr. 243].)

Corning then approached Brooks, saw a .32 caliber handgun on his person, picked it up, pulled the clip out and threw it across the room. He walked outside and picked up Brooks' .25 caliber handgun from the floorboards of Brooks' vehicle and took it back inside the residence. He threw his .45 across the room, took Grace's keys and drove away. Before surrendering to the police he visited his sister and gave her the .25 he had taken from Brooks' car.

## II

### A

CALJIC No. 2.27 (1977 rev.) provides: "Testimony which you believe given by one witness is sufficient for the proof of any fact. However, before finding any fact [required to be established by the prosecution] to be proved solely by the testimony of such a single witness, you should carefully review all the testimony upon which the proof of such fact depends."

Instead of giving that instruction the court said: "It follows, then, that testimony which you believe and which you find a convincing force given by one witness is sufficient for the proof of any particular fact in the case. However, before finding any fact, *particularly* any facts required to be established by the prosecution, it could be proved solely by the testimony of a single witness, you should carefully review and consider all the testimony upon which the proof of that fact depends." (Italics supplied.)

■ Corning contends the modified instruction, especially the words *"particularly* . . . required to be established by the prosecution," told the jury to exercise caution not only in reviewing the testimony of a prosecution witness, but also in considering the uncorroborated testimony of a defense witness. Here, Corning, a key witness on his own behalf, says this modified instruction resulted in the prejudicial dilution of his presumption of innocence.

Corning was the only one who saw Brooks with a gun. Contrary testimony was given by Grace, Phillips and DePonte, all of whom testified they did not see Brooks armed at the time he entered the residence. Phillips did not see Brooks with a gun during the argument seconds before Corning shot him. Phillips also saw Corning point the gun at Grace and shoot her. The court instructed the jury the prosecution had the burden of proving each and every element of the charged crimes beyond a reasonable doubt and the prosecution had the burden of proving beyond a reasonable doubt that the homicide was not justifiable. (See CALJIC No. 5.15 (1977 rev.).) The court's error in modifying the instruction had little or no effect on the pros-

ecution's burden. Corning suffered no prejudice. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) His reliance on *People* v. *Gainer* (1977) 19 Cal.3d 835, 854-856 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73], is factually and legally inapposite.

### B

■ Corning argues the court also erred in giving an instruction based upon *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]. The jury was instructed that lack of malice differentiated voluntary manslaughter from murder. The former required the intent to kill, but not malice. The court also instructed the jury that an honest but unreasonable belief in the necessity of self-defense negated the element of malice and Corning could not be convicted of murder, though he could be convicted of voluntary manslaughter.

Corning asserts the giving of the *Flannel* instruction combined with the instruction on voluntary manslaughter invaded the province of the jury by preventing it from finding that a good faith but unreasonable belief in the necessity of self-defense could negate an intent to kill. (But see *People* v. *Ibarra* (1982) 134 Cal.App.3d 413, 419 [184 Cal.Rptr. 639].) Corning describes the court's error as "perhaps subtle" but nonetheless prejudicial.

In giving the challenged instruction, the court carefully distinguished between *Flannel* self-defense and traditional self-defense, labeling the former as "imperfect self-defense." The court properly cautioned the jury: "Later on in the instructions I will talk to you about self-defense which involves an honest and reasonable belief and can provide a complete defense and a basis for a finding of not guilty because that may resolve in a lawful killing rather than an unlawful killing." These correct statements of the law distinguishing murder from voluntary manslaughter and highlighting the exculpatory limitation of *Flannel* self-defense did not intrude on the jury's fact-finding function in determining Corning's culpability.

### C

■ Corning next asserts the court should have instructed the jury *sua sponte* on accident and misfortune in reference to the counts of attempted murder and aggravated assault on his wife. (See CALJIC No. 4.45 (1979 rev.).)[3]

---

[3]CALJIC No. 4.45 (1979 rev.) reads: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show no evil purpose, intention or culpable negligence, he does not thereby commit a crime."

The contents of CALJIC No. 4.45 (1979 rev.) are self-evident. Here, Corning asked the jury to accept his testimony that his .45 accidentally went off three or four times and wounded his wife. Corning had earlier accused Grace of "fooling around" with Brooks. Phillips told the police she saw Corning point the gun at Grace and shoot her. A police technician testified it "takes a total and deliberate pull back on the trigger to fire each round" of Corning's .45. The court fully instructed the jury on the general intent necessary to constitute aggravated assault. Understandably, and consistent with Corning's defense, his lawyer argued at closing that Corning was not guilty because the shooting of Grace was accidental and he never intended to hurt her. In light of the evidence, the jury's findings rejecting Corning's version of the events and the self-evident nature of CALJIC No. 4.45 (1979 rev.), it is not reasonably probable a result more favorable to Corning would have been reached had that instruction been given. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## D

■ As a corollary to the foregoing argument, Corning says the court prejudicially erred by failing to instruct *sua sponte* on the lesser included offense of attempted voluntary manslaughter to the charge of attempted murder of Grace. (See *People* v. *Tucciarone* (1982) 137 Cal.App.3d 701, 704-706 [187 Cal.Rptr. 159].)

"The trial court is not obligated to instruct *sua sponte* on necessarily included offenses unless the evidence would justify a conviction of such offenses. [Citation.]" (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 325 [185 Cal.Rptr. 436, 650 P.2d 311].) The evidence here would not have justified a conviction for attempted voluntary manslaughter. Corning defended his actions by describing the shooting of Grace as accidental. He further testified he had no ill will toward Grace at the time of the shooting and never intended to hurt her. The court properly did not instruct *sua sponte* on attempted voluntary manslaughter. (Compare *People* v. *Tucciarone, supra,* 137 Cal.App.3d at pp. 706-707.)

## E

Corning further complains the court prejudicially erred by failing to instruct *sua sponte* on felony battery (§§ 242, 243, subd. (d)). This argument assumes felony battery is necessarily included in an accusatory pleading charging aggravated assault (former § 245, subd. (a)) combined with gun use (§ 12022.5) and great bodily injury (§ 12022.7) enhancements. ■ However, enhancements may not be considered as part of an

accusatory pleading for purposes of identifying lesser included offenses. (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 96, 100-101 [192 Cal.Rptr. 748, 665 P.2d 520].) Consequently, Corning's argument has merit only if felony battery is a lesser included offense of aggravated assault.

■ Aggravated assault is an attempt offense (§ 240, former § 245, subd. (a); *People* v. *Yeats, supra,* 66 Cal.App.3d at p. 878), and thus may be committed without the actual use of force or violence necessary for simple battery (§ 242). (*In re Robert G.* (1982) 31 Cal.3d 437, 441 [182 Cal.Rptr. 644, 644 P.2d 837]; *People* v. *Yeats, supra,* 66 Cal.App.3d at p. 878.) Since aggravated assault may also be committed without the actual use of force or violence necessary for felony battery, felony battery is not a lesser included offense of aggravated assault. (See *ibid.*) *Sua sponte* felony battery instructions were not required.

### III

■ Corning contends his six-year sentence for aggravated assault and infliction of great bodily injury is cruel and unusual punishment violating the United States and California Constitutions. (U.S. Const., Amends. VIII and XIV, § 1; Cal. Const., art. I, § 17.) This argument assumes Corning's aggravated assault/great bodily injury offense is equivalent to felony battery. The maximum possible punishment for felony battery is four years. (§ 243, subd. (d).) Therefore, Corning argues a greater sentence for an equivalent offense involving identical conduct is cruel and unusual punishment. (See *People* v. *Schueren* (1973) 10 Cal.3d 553, 558-561 [111 Cal.Rptr. 129, 516 P.2d 833]; *In re Lynch* (1972) 8 Cal.3d 410, 426 [105 Cal.Rptr. 217, 503 P.2d 921]; cf. *People* v. *Macias* (1982) 137 Cal.App.3d 465, 475 [186 Cal.Rptr. 100].) He also argues his greater sentence denies him the equal protection of the laws. (U.S. Const., Amend. XIV, § 1; Cal. Const., art. I, § 7, subd. (a).)

Assuming arguendo we can consider a great bodily injury enhancement in combination with an aggravated assault offense for purposes of comparing sentences imposed for equivalent offenses (but see *People* v. *Wolcott, supra,* 34 Cal.3d at pp. 96, 100-101), Corning's argument fails because it erroneously assumes his aggravated assault/great bodily injury offense is equivalent to felony battery. Felony battery is a consummated assault (*People* v. *Glover* (1967) 257 Cal.App.2d 502, 506 [65 Cal.Rptr. 219]; *People* v. *McCaffrey* (1953) 118 Cal.App.2d 611, 618 [258 P.2d 557]) in which the victim suffers serious bodily injury. (§ 243, subds. (d) and (e)(5).) Corning consummated his assault by inflicting great bodily injury (§ 12022.7) on his wife. "Serious bodily injury" and "great bodily injury" are essentially equivalent elements. (*People* v. *Kent* (1979) 96 Cal.App.3d 130, 136-137

[158 Cal.Rptr. 35].) However, Corning inflicted great bodily injury here by using a gun (§ 12022.5). Felony battery can be committed without using a gun. (See §§ 242, 243, subd. (d).) Therefore, even if Corning's conduct could have been charged under a different criminal category carrying a less severe punishment (see § 954), the aggravated assault/great bodily injury offense of which Corning stands convicted is greater than, rather than equivalent to, felony battery. It follows that Corning's greater sentence for his greater offense is not cruel and unusual punishment. Nor is it a violation of equal protection, because "[p]ersons convicted of *different* crimes are not similarly situated for equal protection purposes. [Citations.]" (*People* v. *Macias, supra,* 137 Cal.App.3d at p. 473, italics in original.)

### Disposition

Judgment affirmed.

Brown (Gerald), P. J., and Butler, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 19, 1983.