Filed 9/9/22 P. v. Norman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076318 |
| v. | (Super.Ct.No. FWV18000674) |
| NORVELL NORMAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Shahla Sabet, Judge. (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed in part; reversed in part with directions.

C. Matthew Missakian, by appointment of the Court of Appeal, for Defendant and Appellant.

1

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

In October 2020, a jury found defendant and appellant Norvell Norman guilty of assault with intent to commit forcible rape (Pen. Code, § 220, subd. (a)(1),[1] count 1), attempted forcible rape (§§ 664, 261, subd. (a), count 2), and assault with a firearm (§ 245, subd. (a)(2), count 6.)  In these counts, the jury found that defendant personally used a firearm.  (§ 12022.53, subd. (b), counts 1 & 2; § 12022.5, subds. (a), (d), count 6.) The jury also found defendant guilty of criminal threats (§ 422, count 3), false imprisonment by violence (§ 236, count 4), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 5), and unlawful firearm possession (§ 29800, subd. (a)(1), count 7).[2]

In December 2020, defendant was sentenced to 17 years eight months in state prison:  the upper term of six years on count 1, plus 10 years for the personal use enhancement on count 1, plus consecutive terms of eight months on count 3 and one year on count 6.  A concurrent term was imposed on count 7, and additional terms were imposed but stayed on counts 2, 4, and 5, and on the personal use enhancements on counts 2 and 6.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Defendant admitted two felony convictions for purposes of count 7.

In this appeal, the parties and we agree that defendant's conviction in count 2 for attempted forcible rape must be reversed because it is a lesser included offense of his conviction in count 1 for assault with intent to commit forcible rape. Thus, we reverse defendant's conviction in count 2. Defendant also claims his conviction in count 5 for assault by means of force likely to produce great bodily injury must be reversed because insufficient evidence shows that the force he used in placing the victim, Jane Doe (Doe), in a chokehold during the assault was likely to cause Doe great bodily injury. Alternatively, he claims his counsel rendered prejudicial ineffective assistance in failing to object to the prosecutor's argument, which he claims urged the jury to convict him in count 5 based on force he did not use, but might have used, had the assault continued.

We conclude substantial evidence shows that the force defendant used in placing Doe into the chokehold was likely to cause Doe to lose consciousness and, thus, cause her great bodily injury. (§ 245, subd. (a)(4).) We also find no merit to defendant's ineffective assistance claim because the prosecutor's argument was proper. There is no reasonable likelihood the jury construed the prosecutor's argument as allowing it to convict defendant in count 5 based on any force that defendant did not use.

The parties and we also agree that the matter must be remanded for resentencing in light of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567), which amended section 1170, subdivision (b), to limit the court's discretion to impose an upper term. (Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.) At resentencing, the court may also consider whether alternative terms should be imposed pursuant to Senate Bill No. 518 (2021-2022 Reg. Sess.) (Senate Bill 518), which amended section 654. (Stats. 2021,

3

ch. 441, § 1, eff. Jan. 1, 2022.) More broadly, defendant must be fully resentenced. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) We reverse defendant's conviction in count 2, remand for resentencing, and affirm the judgment in all other respects.

## II. FACTUAL BACKGROUND

On February 20, 2018, defendant contacted Doe by text message in response to an ad for worn, thong underwear that Doe had posted on an Internet website. In a text conversation, they agreed that, in exchange for $200, Doe would give defendant two pairs of used, thong underwear, and model them for him in his apartment. Doe asked defendant to confirm this was not a "prank" because she could not afford to make a long drive to his apartment for nothing. Doe did not agree to be completely nude, or to have sex, and she declined defendant's request to send "free" nude photographs of herself.

That day, Doe drove to defendant's apartment with her boyfriend, John Doe. Doe went up to defendant's second-floor apartment while John Doe stayed in the car. The door to the apartment was open, Doe walked in, defendant greeted her, and then defendant closed and locked the door behind Doe. Inside the apartment, defendant gave Doe $200, which Doe put in her backpack. Doe then gave defendant a pair of underwear she was carrying and took off her shorts to model the underwear she was wearing. Modeling meant "showing him the underwear on [her] body." Doe never took her t-shirt off.

Defendant sat on a couch as Doe modeled the underwear, but defendant looked down and seemed "uninterested"; he "was just sitting there with his hands folded." A while later, he took pictures of Doe with a tablet. Doe modeled the underwear for

4

defendant for 10 to 15 minutes. Because defendant did not seem interested in her, Doe asked defendant if she could use his bathroom to wash her hands, then leave.

In the bathroom, Doe took off the underwear she had been modeling, put her shorts back on, and washed her hands. After she left the bathroom, Doe put the underwear she had modeled on the couch near defendant. As Doe was getting her shoes and backpack and preparing to leave, defendant grabbed her, spun her around, and put her in a chokehold with his left arm against her throat. Defendant said, "This is a prank," and later said, "I just want to fuck you real quick." With his right hand, he was reaching for Doe's clothes. Doe felt the pressure of defendant's arm on her throat and had "trouble breathing." She said she could not breathe "properly," and she "almost" lost consciousness. She was scared and thought she was going to be raped and killed. She fought back. When it "got to the point where [she] thought [she] was going to pass out," she bit defendant's left arm so hard that his arm bled in her mouth. She was screaming for help and she was also screaming John Doe's name.

Defendant had Doe in the chokehold for around 10 minutes. While Doe was in the chokehold, defendant moved Doe to the couch where he had been sitting, then moved some pillows and clothing to reveal a gun on the couch. Defendant got on top of Doe, bent her over, and pushed her face so close to the gun that she could see the Glock logo and smell gunpower. He said, "If you scream, I'll shoot you," but Doe kept screaming and struggling to escape. Doe screamed "even louder" when she saw the gun. The entire time Doe was screaming, defendant was holding her in the chokehold.

5

John Doe heard Doe's "muffled" screams, got out of the car, ran up to the second floor, and found the apartment where the screams were coming from. The door was locked and, "in a panic," John Doe broke the apartment window with a metal vape device. But John Doe could not get into the apartment through the window because there was no walkway or footing beneath it. John Doe broke the door open with his shoulder, went inside the apartment, and saw that defendant had Jane Doe in a chokehold. To John Doe, it looked like defendant was trying to make Doe "pass out."

Defendant looked "angry" and "confused," as though he was not expecting John Doe to break in. As soon as John Doe came through the door, defendant released Doe and began to reach for the gun. Doe began to catch her breath and grab her things as John Doe jumped between Doe and defendant. Defendant grabbed a gun and pointed it at John Doe's face, with his finger on the trigger. Following a "stare down," Doe and John Doe ran out of the apartment and drove away.

Doe dropped off John Doe near the apartment, then drove to the nearest shopping center and called the police. Doe did not want to call the police, but John Doe convinced her to do so. John Doe did not initially want to talk to the police because he was on probation, but he later spoke with the police and told them everything he later testified to at trial. He was initially confused about the whole situation and did not know what to do.

Doe initially told police that she had been distributing flyers door-to-door, and that defendant grabbed her and pulled her inside his apartment. But after police continued to question her, she realized she had to tell the truth even though it was "so embarrassing."

6

She told the truth after she asked an officer whether selling underwear was illegal, and an officer told her that selling underwear was not illegal.

Doe suffered minor injuries during the struggle with defendant. An ear plug was pulled out of Doe's ear, which caused her ear to swell. Doe also sustained a "mark" or "line" on her neck, like an abrasion or a bruise, but the skin was not cut. Doe also scraped her ankle while escaping. She did not seek or receive medical treatment for her injuries.

Police went to defendant's apartment and found him sitting outside with bite marks on his left bicep. The apartment window and door were broken. In the apartment, police found a gun belt in a closet and a Glock 19 handgun, with ten rounds in the magazine, on a small couch, partially covered with a blanket. Two pairs of Jane Doe's underwear and her earplug were found in a trashcan. Police found a tablet computer, but no photographs of Doe were on it. When police called the phone number that was used to text Doe, the tablet rang through an application.

## III. DISCUSSION

A. *As the Parties Agree*, *Defendant's Conviction in Count 2 Must be Reversed*

Defendant claims, and the People and we agree, that defendant's conviction in count 2 for attempted forcible rape must be reversed in light of his conviction in count 1 for the greater offense of assault with intent to commit forcible rape. A person cannot be convicted of both a greater offense and a lesser offense that is necessarily included within the greater offense. (*People v. Ramirez* (2009) 45 Cal.4th 980, 984.) Courts use the statutory elements test in determining whether an offense necessarily includes a lesser

7

offense.  (*People v. Reed* (2006) 38 Cal.4th 1224, 1227 [" '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser offense included within the former.' "].)

Attempted rape is a lesser offense of assault with intent to commit rape because the offenses differ only in that assault with intent to commit rape requires an assault, while attempted rape does not.  (*People v. Holt* (1997) 15 Cal.4th 619, 674; *People v Ghent* (1987) 43 Cal.3d 739, 757; *People v. Rupp* (1953) 41 Cal.2d 371, 382 (*Rupp*), disapproved in part on other ground by *People v. Cook* (1983) 33 Cal.3d. 400.)  As *Rupp* explained, "an assault with intent to commit rape is merely an aggravated form of an attempted rape, the latter differing from the former only in that an assault need not be shown. . . . [¶]  'An "assault" with intent to commit a crime necessarily embraces an "attempt" to commit said crime but said "attempt" does not necessarily include an "assault." ' "  (*Rupp*, at p. 382.)  "Thus, a person who commits an assault with intent to commit rape necessarily also always commits an attempted rape."  (*People v. Martinez* (1985) 171 Cal.App.3d 727, 734.)  Defendant's conviction in count 2 must therefore be reversed.

B. *Substantial Evidence Shows Defendant Used Force Likely to Produce Great Bodily Injury in Placing and Holding Doe in the Chokehold* (*Count 5*)

Defendant claims his conviction in count 5 for assaulting Doe by means of force likely to produce great bodily injury must also be reversed because insufficient evidence shows he used force likely to produce great bodily injury in the assault.  (§ 245, subd. (a)(4).)  He claims the force he used in placing Jane Doe in the chokehold was not

8

likely to cause her great bodily injury—significant or substantial physical injury—both because the chokehold "left almost no marks" and because Doe was able to scream "throughout the incident." We find no merit to this claim.

1. Legal Principles

In reviewing a claim that insufficient evidence supports a conviction, we review the record in the light most favorable to the prosecution and the judgment to determine whether the record contains substantial evidence—evidence that is reasonable, credible, and of solid value—on the basis of which any rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) Substantial evidence cannot be based on "mere speculation as to probabilities without evidence." (*People v. Morris* (1988) 46 Cal.3d 1, 21, disapproved on another ground in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5.)

Section 245, subdivision (a)(4), criminalizes "an assault upon the person of another by any means of force likely to produce great bodily injury." "Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.) " '[S]erious bodily injury' " and " 'great bodily injury' " have "substantially the same meaning" (*People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375) and "are essentially equivalent elements." (*People v. Corning* (1983) 146 Cal.App.3d 83, 90.) " ' "[A]ll aggravated assaults are ultimately determined based on the force likely to be applied against a person." ' " (*In re B.M.* (2018) 6 Cal.5th 528, 535.)

9

For purposes of battery with serious bodily injury (§ 243, subd. (d)), serious bodily injury is defined to mean, "a serious impairment of physical condition, including, but not limited to, . . . loss of consciousness . . . ." (*Id.* at subd. (f)(4); *People v. Wade* (2012) 204 Cal.App.4th 1142, 1146-1149.) Because a loss of consciousness is a serious bodily injury, force likely to cause a loss of consciousness is force likely to produce serious bodily injury which is equivalent to force likely to produce great bodily injury. (§ 245, subd. (a)(4); *People v. Corning*, *supra*, 146 Cal.App.3d at p. 90.)

Section 245 focuses on the injury likely to result from the force that was actually used in the assault, not on injuries that were likely to result from any force that might have been used but was not used. (*In re B.M.*, *supra*, 6 Cal.5th at pp. 548-549; *People v. Aguilar* (1997) 16 Cal.4th 1023, 1035; *People v Drayton* (2019) 42 Cal.App.5th 612, 618; *People v Duke* (1985) 174 Cal.App.3d 296, 302-303 (*Duke*).) We assess "potential harm in light of the evidence" without speculating about what force might have been used or what injuries any unused force might have caused. (*In re B.M.*, at pp. 535-538.)

Hands or fists alone may be used in a manner likely to produce serious bodily injury or great bodily injury (*People v. Aguilar*, *supra*, 16 Cal.4th at p. 1028), and injury is not an element of the crime. (*People v. Covino* (1980) 100 Cal.App.3d 660, 667.) "It is enough that the force used is likely to cause serious bodily injury." (*People v. Hopkins* (1978) 78 Cal.App.3d 316, 320.) The evidence may show that serious injury was likely "even if" serious injury "did not come to pass." (*In re B.M.*, *supra*, 6 Cal.5th at p. 535.)

10

2. Analysis

Substantial evidence shows that defendant used force likely to cause Doe serious injury or great bodily injury when he placed and held Doe in a chokehold for around 10 minutes. Doe testified that the chokehold restricted her breathing—she had "trouble" breathing and she could not breathe "properly"—and this nearly caused her to lose consciousness. She said that "it got to the point" where she thought she was going to pass out. Based on Doe's testimony, the jury could have reasonably inferred that defendant used force likely to cause Doe great bodily injury—a loss of consciousness—when he placed and held Doe in the chokehold. (See *People v. Wade*, *supra*, 204 Cal.App.4th at p. 1148 [Loss of consciousness is serious bodily injury for purposes of battery with serious bodily injury.]; § 245, subd. (a)(4).)

Defendant claims the evidence is insufficient to show that the force he used during the chokehold was likely to cause Doe great bodily injury because the chokehold "left almost no marks" on her neck, the swelling on her ear lobe was a minor injury, and her ability to scream shows she was able to breathe and not likely to lose consciousness. He also claims Doe was speculating when she said she "almost" lost consciousness and could not breathe "properly." We disagree. Doe was not speculating when she testified that the chokehold prevented her from breathing "properly" and "almost" caused her to lose consciousness. Rather, Doe testified to what she saw, heard, and felt when defendant had her in the chokehold.

Further, that Doe did not actually suffer any great bodily injury, including a loss of consciousness, and that Doe was able to scream during the chokehold, does not mean that

11

defendant did not use force at any point during the chokehold that was likely to cause Doe to suffer great bodily injury, including a loss of consciousness. Doe's testimony that she could not breathe "properly" and that she "almost" lost consciousness or "passed out" during the chokehold was reasonable, and the jury was entitled to credit Doe's testimony. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 ["Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends."].) Doe's testimony was not "so inherently implausible . . . to justify disregarding it under the substantial evidence rule." (*Fortman v. Hemco* (1989) 211 Cal.App.3d 241, 254.)

Defendant claims *Duke* is controlling. The defendant in *Duke* held the victim in "a headlock" while he touched her breast over her clothing. (*Duke*, *supra*, 174 Cal.App.3d at p. 302.) The victim said that "[t]he headlock made her feel 'choked' but did not cut off her breathing." (*Ibid*.) Although the victim "felt that his hold on her was 'firm,' . . . [she] did not say that he tightened his grip." (*Ibid*.) The victim "could still scream and she did get away. The victim did not describe an attempt to choke or strangle her." (*Ibid*.) Thus, the *Duke* court found insufficient evidence to sustain the defendant's conviction for assault by means of force likely to produce great bodily injury. (*Id*. at p. 303.) *Duke* is distinguishable because the defendant there did not restrict the victim's breathing or nearly cause the victim to lose consciousness by placing the victim in a "headlock." (*Id*. at p. 302.) Here, substantial evidence shows that Doe could not breathe

properly and nearly lost consciousness due to the pressure defendant placed on her throat when he had her in the "chokehold." Defendant's reliance on *Duke* is unavailing.

C. *Defendant's Ineffective Assistance of Counsel Claim Lacks Merit*

Defendant alternatively claims his defense counsel rendered prejudicial ineffective assistance in failing to object when, during closing argument, he claims the prosecutor misstated the law by asserting: "[T]here was force likely to cause great bodily injury because without John Doe's interference, appellant *might have* 'squeezed a little harder' and *might have* applied force 'a little longer.' "

This claim mischaracterizes the prosecutor's argument. It is not reasonably likely that the jury understood the prosecutor as suggesting that the jury could find defendant used force likely to produce great bodily injury in count 5 based on force he *might have used* against Doe, if John Doe had not interrupted him. Thus, there was no basis to object to the argument, and no ineffective assistance in failing to object.

Defense counsel has a duty to ensure that prosecutorial argument does not mislead the jury, and defense counsel renders prejudicial ineffective assistance in failing to object to an argument when there is a reasonable likelihood that the argument will mislead the jury. (*People v. Centeno* (2014) 60 Cal.4th 659, 674-679.) But "[w]hen attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.' " (*Id.* at p. 667.)

13

Here, there is no reasonable likelihood that the jury understood or applied the prosecutor's argument as allowing it to convict defendant in count 5 based on force that defendant might have used, but did not use, in holding Doe in the chokehold. The prosecutor merely pointed out that this would be a "very different case" if defendant had used additional force by "squeez[ing] a little harder" or "a little longer." It would be a very different case, she suggested, because had defendant squeezed "a little harder" or "a little longer," then Doe *would have* lost consciousness and suffered great bodily injury. But the prosecutor did not suggest that the jury should or could convict defendant in count 5 based on force he did not use.

Instead, the prosecutor emphasized that her only burden was to show that the force defendant did use was likely to cause Doe great bodily injury, not that it did cause Doe great bodily injury. She said, "All I need to prove is that the force was likely to produce great bodily injury. Likely to produce. Very different from that it actually did. That's not what I'm being asked to do. Remember, this is a swing and a miss, right? All I need to show [is] that force, that stranglehold was likely to produce great bodily injury. . . . I don't need to prove that the defendant actually ever touched someone. . . . [¶] . . . [D]id he produce great bodily injury? Was that force likely to produce great bodily injury? I would submit to you, yes. *When he put Jane Doe in a chokehold, she said she could not breathe. She almost went unconscious. That is great bodily injury. . . . And it's only the likelihood of it, so had he squeezed a little harder, had it gone on a little longer, had John Doe not broken in, we would have a very different case.* All we're facing was that the force was likely to produce great bodily injury. . . . I don't have to prove that the

14

defendant actually touched someone." (Italics added.) Further, the court's instructions did not tell the jury it could convict defendant in count 5 based on force defendant did not use. (CALCRIM No. 875.) Thus, we find no merit to defendant's ineffective assistance claim.

D. *As the Parties Agree, Defendant Must be Resentenced*

In December 2020, defendant was sentenced to the upper term of six years on count 1 plus 10 years for the personal use enhancement on count 1. (§§ 220, subd. (a)(1), 12022.53, subd. (b).) In imposing the upper term, the court found a single circumstance in aggravation: "Defendant was armed with or used a weapon at the time of the commission of the crime." (Cal. Rules of Court, rule 4.421(a)(2).)[3] The court found no circumstances in mitigation. (Rule 4.423.) As defendant concedes, the imposition of the upper term was lawful at the time defendant was sentenced in December 2020. At that time, the court had broad discretion to select the lower, middle, or upper term under former section 1170, subdivision (b). (See *People v. Sandoval* (2007) 41 Cal.4th 825, 846-847; Rules 4.420(b), 4.421, 4.423.)

Effective January 1, 2022, Senate Bill 567 amended section 1170, subdivision (b), to require the court to impose a term of imprisonment not exceeding the middle term, except as provided by subdivision (b)(2). (Stats. 2021, ch. 731, § 1.3; see Cal. Const., art. IV, § 8, subd. (c)(1); Gov. Code, § 9600, subd. (a); *People v. Camba* (1996) 50 Cal.App.4th 857, 865.) Under the new statute, the court may impose an upper term only

---

[3] Undesignated references to rules are to the California Rules of Court.

15

where (1) there are circumstances in aggravation that justify the upper term and the facts underlying the aggravating circumstances have been established either by stipulation or proof at trial beyond a reasonable doubt (§ 1170, subd. (b)(1) & (2)) or (2) the court finds based on certified records that the defendant has prior convictions. (*Id.* at subd. (b)(3).) Section 1170, subdivision (b)(5), provides: "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."

The parties and we agree that defendant must be resentenced in light of Senate Bill 567 and its amendments to section 1170, subdivision (b).[4] Because it imposed sentence on the personal use enhancement on count 1 (§ 12022.53, subd. (b)), the court could not rely on defendant's personal firearm use as a factor in aggravation to justify imposing the upper term on count 1. (§ 1170, subd. (b)(5).) Thus, defendant's upper term sentence on count 1 is unauthorized (*ibid.*), and the case must be remanded so defendant may be resentenced pursuant to section 1170, subdivision (b), as amended by Senate Bill 567.

The parties also agree, and so do we, that upon remand, a court is not prohibited from resentencing based on any new law in effect at the time of resentencing, including the changes Senate Bill 518 made to section 654, effective January 1, 2022. Senate Bill 518 amended section 654, subdivision (a), to provide that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under

---

[4] The parties also agree, and so do we, that Senate Bill 567 applies retroactively to defendant's nonfinal judgment of conviction and sentence. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.)

either of such provisions . . . ." (Stats. 2021, ch. 441, §1, eff. Jan 1, 2022.) Former section 654 provided that such an act or omission, "shall be punished under the provision that provides for the longest potential term of imprisonment." (See *ibid*.)[5] On remand, the court may reconsider all of its sentencing choices based on the laws and circumstances that apply at the time of resentencing, including amended section 654. (Stats. 2021, ch. 441, § 1, eff. Jan 1, 2022; see *People v. Valenzuela* (2019) 7 Cal.5th 415, 425 ["[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant."]; *People v. Buycks*, *supra*, 5 Cal.5th at p. 893 [When part of a sentence is stricken on review, " 'a full resentencing as to all counts is appropriate, so the trial court can exercise its discretion in light of the changed circumstances.' "].)

---

[5] Senate Bill 518 retroactively applies to defendant's nonfinal judgment for the same reasons Senate Bill 567 retroactively applies. See footnote 4, *ante*.

## IV. DISPOSITION

Defendant's conviction in count 2 for attempted forcible rape (§§ 664, 261, subd. (a)(2)) is reversed, and the matter is remanded to the trial court for full resentencing on defendant's remaining convictions and sentencing enhancements, consistent with this opinion, the amendments to sections 654 and 1170, subdivision (b), and the law and circumstances in effect at the time or resentencing. The court is further directed to prepare a supplemental sentencing minute order and an abstract of judgment reflecting defendant's new sentence and to forward a copy of the abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:


CODRINGTON _____
Acting P. J.


RAPHAEL _____
J.

18