Filed 3/26/24 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>OSCAR DERAN BARNER,<br><br>        Defendant and Appellant. | C095986<br><br>(Super. Ct. No. 18FE015537)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Sacramento County, Alyson L. Lewis, Judge. Affirmed as modified.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of Part III of the Discussion.

THE COURT:

It is ordered that the opinion filed herein on March 12, 2024, be modified as follows:

The last paragraph of section I (C) of the discussion, starting at the bottom of page 16, beginning "Accordingly, we conclude" is deleted and the following paragraph is inserted in its place:

> Accordingly, we conclude that a new statement should be submitted with an amended order of commitment. The accompanying statement of calculation of the maximum term shall list the maximum term associated with each offense. This includes for count one: a 25 year-to-life term for assault with force likely to produce great bodily injury (§§ 245, subd. (a)(4), 667, subd. (e)(2), 667.5, subd. (c)(8), 1170.12, subds. (b)(1), (c)(2)(A)(ii)), with a three-year term for personal infliction of great bodily injury (§ 12022.7, subd. (a)), and two five-year prior conviction enhancements (§ 667, subd. (a)). For count two: a four-year term for battery by force resulting in serious bodily injury (§ 243, subd. (d)) plus two five-year prior conviction enhancements (§ 667, subd. (a)), stayed pursuant to section 654. (See *People v. Tua* (2018) 18 Cal.App.5th 1136, 1143.) The order of commitment must be amended to reflect a maximum commitment term of life.

There is no change in the judgment.

Respondent's petition for rehearing is denied.

BY THE COURT:

_____/s/_____
EARL, P. J.

_____/s/_____
KRAUSE, J.

_____/s/_____
WISEMAN, J.[*]

_____

[*]    Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 3/12/24 (unmodified opinion)

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095986 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE015537) |
| v. | |
| OSCAR DERAN BARNER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Alyson L. Lewis, Judge. Affirmed as modified.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]     Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of Part III of the Discussion.

1

A jury found appellant Oscar Deran Barner not guilty by reason of insanity for offenses Barner committed when he repeatedly punched his neighbor, breaking bones in his neighbor's face. Due to Barner's status as a "three-strike" offender, the trial court ordered him committed to the State Department of State Hospitals, setting a maximum term of 25 years to life. Barner now raises several statutory and constitutional challenges to the term of his commitment. We shall modify the judgment to reflect a maximum term of commitment for life and order the trial court to issue an amended order of commitment with a new accompanying statement relating to the calculation of the maximum term.

## FACTUAL AND PROCEDURAL BACKGROUND

In light of the issues raised in this appeal, it is not necessary to provide a lengthy discussion of the facts supporting the underlying offenses. It suffices to say that for no apparent reason, Barner beat P.S.—a man with cerebral palsy with whom Barner had previously been friendly—into unconsciousness. P.S. described Barner during the incident as "a different person" from the one he knew, and that he "had a blank look in his eyes." P.S. suffered facial and orbital fractures, significant facial swelling, and lacerations. Barner pleaded not guilty and not guilty by reason of insanity. As required by statute, his trial was bifurcated into a guilt phase followed by a sanity phase. (See Pen. Code, § 1026, subd. (a).)[1]

A jury found Barner guilty of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count one) and battery by force resulting in serious bodily injury (§ 243, subd. (d); count two). The jury also found true two special allegations: that Barner personally inflicted great bodily injury (§ 12022.7, subd. (a); count one) and serious bodily injury (§ 1192.7, subd. (c)(8); count two). At the sanity phase, Barner introduced evidence that he was diagnosed with schizoaffective disorder,

---

[1]     Undesignated statutory references are to the Penal Code.

which rendered him insane at the time of the offenses. The jury found Barner not guilty by reason of insanity for both offenses. The court held a separate hearing on the prosecution's additional allegations that Barner had two prior strike convictions for purposes of the "Three Strikes" law (§ 667, subd. (e)(2)) and allegations that each strike qualified for a five-year enhancement to Barner's sentence (§ 667, subd. (a)). The trial court found true the allegations of the prior strike convictions.

Subsequently, Barner requested the court strike his prior strikes under section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). He also requested the court strike one or both five-year prior strike enhancements under section 1385. In doing so, defense counsel acknowledged that "It's clear that if the Court doesn't strike the strike it's a 25-to-life case." The court "acknowledge[d] it ha[d] the discretion to strike the strikes in order to take Mr. Barner out of indeterminate sentencing into determinate sentencing," but ultimately declined to do so. The court calculated an indeterminate maximum term of commitment of 25 years to life on count one. The court struck one of the five-year enhancements pursuant to sections 667 and 1385, calculating only one five-year enhancement. The court ordered Barner committed to the State Department of State Hospitals for a maximum term of 25 years to life on count one, plus five years for the section 667 enhancement. Although earlier in the proceeding the court referenced staying count two, the battery, it did not mention count two when pronouncing the order of commitment. The minute order associated with that hearing indicates count two is "stayed pending restoration to competency." The order of commitment states the maximum term of 25 years to life.

## DISCUSSION

### I

### State Hospital Commitment

Barner raises several challenges to his state hospital commitment. He maintains the trial court erred in holding a sentencing hearing, rather than a hearing to calculate his

term of commitment. He further claims the court erred in applying the Three Strikes law to set an indeterminate life term ("life-top" term) as the maximum term of commitment, because the statute requires the court to use the upper term for the base offense in calculating the commitment term. We disagree.

### A. Legal Background

An insanity finding that follows a determination (by verdict or plea) that the accused committed the criminal act charged establishes the accused was not criminally responsible for the offense committed. (*In re Moye* (1978) 22 Cal.3d 457, 466, superseded by statute as stated in *Hudec v. Superior Court* (2015) 60 Cal.4th 815, 822.) Therefore, a finding of not guilty by reason of insanity does not result in a conviction. (*People v. Morrison* (1984) 162 Cal.App.3d 995, 998; *People v. Superior Court* (*Frezier*) (2020) 54 Cal.App.5th 652, 668.) When a criminal defendant is found not guilty by reason of insanity, that person "is no longer a criminal defendant, but a person subject to civil commitment." (*People v. Lara* (2010) 48 Cal.4th 216, 222, fn. 5 (*Lara*).) If, as here, the sanity of the defendant has not yet been recovered at the time of the verdict, the court directs that the defendant either be committed to the State Department of State Hospitals or placed on outpatient status. (§ 1026, subd. (b).)

"The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous." (*Jones v. United States* (1983) 463 U.S. 354, 368 (*Jones*).) Upon a commitment to a state hospital, the medical director of the facility submits semiannual reports to the court as to the person's status and progress. (§ 1026, subd. (f); see *People v. Sword* (1994) 29 Cal.App.4th 614, 620.) "Release is possible at any time following a mandatory, 180-day commitment period (§ 1026.2, subd. (d)) if the defendant demonstrates his fitness for release, first by successfully completing one year under supervision in a community mental health program and then in a sanity-

4

restoration trial. (§ 1026.2. subd. (e).)" (*People v. Tilbury* (1991) 54 Cal.3d 56, 63.) Thus, a committed insanity acquittee is not always confined for the maximum term.

On the other hand, the commitment may be extended in up to two-year increments if, because "of a mental disease, defect, or disorder, [the person] represents a substantial danger of physical harm to others." (§ 1026.5, subd. (b)(1); see § 1026.5, subd. (b)(8).)

In committing an insanity acquittee, the relevant statute provides: "[T]he court shall state in the commitment order the maximum term of commitment, and the person may not be kept in actual custody longer than the maximum term of commitment, except as provided in this section. For the purposes of this section, 'maximum term of commitment' shall mean the longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted, including the upper term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed less any applicable credits . . . ." (§ 1026.5, subd. (a)(1).)

Whether the trial court had discretion to make certain sentencing choices in calculating a maximum term of commitment presents a question of law, requiring this court to ascertain the proper interpretation of the statutes governing the maximum term of commitment after being found not guilty by reason of insanity. (See *People v. Superior Court* (*Frezier*)*, supra*, 54 Cal.App.5th at p. 659; see also *People v. Scott* (1994) 9 Cal.4th 331, 354 [legal error resulting in an unauthorized sentence subject to de novo review commonly occurs where the court violates mandatory provisions governing the length of confinement].) Similarly, whether the Three Strikes law applies in setting a maximum term of commitment under section 1026.5 involves a question of statutory construction, which we review de novo. (*People v. Tran* (2015) 61 Cal.4th 1160, 1166.)

"When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v.*

5

*Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826; see also *People v. Rubalcava* (2000) 23 Cal.4th 322, 328.) " '[W]e are bound to give effect to a statute according to the usual and ordinary import of those words. [Citation.] We may not add to or alter those words in order to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*People v. Salcido* (2008) 166 Cal.App.4th 1303, 1311.) " 'When used in a statute[,] words must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear, and the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]' [Citation.] 'If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." ' " (*Ibid*.)

### B. *Hearing Setting the Maximum Term of Commitment*

Barner contends that the trial court improperly held a sentencing hearing when it calculated the term of his commitment. He claims that because he was found not guilty by reason of insanity, he was never convicted of the charged offenses and, therefore, cannot be sentenced on them. Nevertheless, he argues, the trial court's use of terminology associated with sentencing hearings as well as making discretionary choices only available during actual sentencing, demonstrated that the trial court did not understand the hearing was merely a calculation hearing, resulting in an unauthorized sentence. It does appear the trial court conflated the commitment hearing with a sentencing hearing. Indeed, after conducting a court trial on the allegations of the prior convictions, the court stated: "[H]aving found the prior convictions proved beyond a reasonable doubt, we'll turn to the *judgment and sentencing* in this matter." (Italics added.) The court then asked defense counsel if he "waive[d] formal arraignment and advisement of rights for *judgment and sentencing*?" (Italics added.) After a lengthy colloquy on whether the trial court had discretion to strike Barner's prior strike, the court stated: "Do all parties submit for *judgment and sentencing*?" (Italics added.) The trial

6

court denied Barner's motion to strike one of his prior strikes alleged under section 667, subdivision (e)(2), "imposed" the indeterminate sentence of 25 years to life, and then granted his motion to strike one of the priors alleged as a five-year enhancement under section 667, subdivision (a). The trial court indicated that such *sentence* would take him to 91 years of age. Finally, at the conclusion of the hearing, the trial court asked the parties to stipulate that the *appropriate sentence* be carried out in the State Department of State Hospitals.

The People agree that an insanity acquittee may not be sentenced, but argue that Barner was properly committed to the state hospital because, notwithstanding the parties' use of language suited to a sentencing hearing in the trial court, Barner was never actually sentenced. We agree. Despite the trial court's perhaps ill-chosen language, the record reflects the trial court ordered Barner committed to the state hospital for a maximum term of 25 years to life. The record also reflects the trial court issued a state hospital commitment order pursuant to section 1026, rather than an abstract of judgment reflecting a sentence or prison commitment. Thus, despite the words employed by the trial court, Barner ultimately was "committed" and not "sentenced."

We also reject Barner's implicit contention that a commitment hearing under section 1026.5 must be devoid of characteristics associated with sentencing hearings. Case law instructs that because an insanity acquittee is relieved of responsibility for their crimes, he or she is not convicted, and therefore may not be sentenced. However, if the acquittee is subject to commitment in the state hospital, section 1026.5, subdivision (a) requires the trial court to designate a maximum term for such a commitment. (§ 1026.5, subd. (a).) The plain language of section 1026.5, subdivision (a)(1) requires that term to be equal to "the longest term of imprisonment which could have been imposed" for the crimes for which they were found guilty had the insanity acquittee been convicted *and* sentenced rather than found not guilty by reason of insanity. (§ 1026.5, subd. (a); *People v. Hernandez* (2005) 134 Cal.App.4th 1232, 1237 (*Hernandez I*).) "In other words, the

7

trial court at first removes the not guilty by reason of insanity issue from the equation in calculating the maximum term of commitment to the state hospital." (*Hernandez I*, at p. 1238.) This naturally implies that elements associated with sentencing hearings will be present during a commitment term calculation hearing.

### C. *Maximum Term of Commitment Calculation*

Barner takes issue with his life-top commitment term. He acknowledges that the plain language of the statute reasonably allows for life-top commitment terms for insanity acquittees who commit offenses, such as murder, punishable by life imprisonment. He claims, however, that the offenses of which the jury found him guilty, assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count one) and battery by force resulting in serious bodily injury (§ 243, subd. (d); count two), are not as a matter of law life-top offenses, and the trial court erred in transforming his offense of assault with infliction of great bodily injury into a life-top term by incorporating the Three Strikes law into the calculation of the maximum term of commitment set forth in section 1026.5. He argues that the Three Strikes law emphasizes punishment, is inconsistent with the goals of treatment pursuant to section 1026, and expressly applies to imprisonment, not commitment to a state hospital. (See §§ 667, subd. (c)(4) ["There shall not be a commitment to any other facility other than the state prison"], 1170.12, subd. (a)(4) [same].)

The People disagree the court erred in applying the Three Strikes law. According to the People, the real error occurred when the court failed to consider the great bodily injury and additional prior conviction enhancements in calculating the maximum term of commitment. The People request this court to order an amended order of commitment, reflecting the maximum term as 38 years to life rather than 25 years to life. We conclude that the Three Strikes law applies to the calculation method set forth in section 1026.5, subdivision (a)(1) and that the minimum term in this case is irrelevant. The relevant term is the maximum term of commitment, which, in this case, is life.

8

In clear and unambiguous language, the statute requires the trial court to calculate as the commitment term the "longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted, including the upper term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed." (§ 1026.5, subd. (a).) As Barner concedes, life-top terms are possible. (See *People v. Endsley* (2018) 28 Cal.App.5th 93, 101 [the longest term of commitment for first degree murder is imprisonment for life]; cf. *Lara, supra*, 48 Cal.4th at pp. 221-222 [recognizing that in calculating the maximum term of commitment under the relevant subdivision of § 1026.5, the patient "thus fell under the indeterminate sentencing law"].) Application of the Three Strikes law has also been used in calculating the maximum term of commitment. (See, e.g., *People v. Chavez* (2008) 160 Cal.App.4th 882, 886, fn. 4 [the Three Strikes law required doubling the terms]; *People v. Dobson* (2016) 245 Cal.App.4th 310, 315-316 (*Dobson I*) [noting the acquittee, who had four prior strikes, would receive an indeterminate term under the Three Strikes law], superseded by Assem. Bill No. 103 (2017-2018) [observing that nothing in the text or history of Prop. 36 suggests that it applies to not guilty by reason of insanity committees]; § 1170.127 [provision allowing insanity acquittees with an indeterminate term under the Three Strikes law to petition for a new commitment term commensurate with Prop. 36].)

Critically, the statute permits the use of all upper terms and enhancements in the calculation and does not distinguish between potential sentences based on criminal conduct or status as a recidivist. (See *People v. Coronado* (1995) 12 Cal.4th 145, 158-159 [conduct and status enhancements are used differently for sentencing purposes].) Indeed, the language demonstrates the Legislature intended courts to set the lengthiest term otherwise warranted by the acquittee's offenses. Based on Barner's offenses, the longest term warranted is calculated through the alternative sentencing scheme of the Three Strikes law. (*Romero, supra*, 13 Cal.4th at p. 527.) Nothing in section 1026.5

suggests the alternative sentencing scheme of the Three Strikes law is outside the confines of the statute. Similarly, nothing in the Three Strikes law suggests that its sentencing provisions were not intended to apply to a determination of the maximum term of commitment under section 1026.5, subdivision (a)(1). (See generally §§ 667; 1170.12.)

Barner argues that because the Three Strikes law does not specifically refer to or incorporate section 1026 or 1026.5, the Three Strikes law does not apply. In support, Barner points to the provisions in the Three Strikes law that list dispositions that "shall not affect the determination that a prior conviction" is a strike, which does not include adjudications of guilt for insanity acquittees under section 1026. (See §§ 667, subd. (d)(1), 1170.12, subd. (b)(1).) The failure to include insanity acquittals in the list of dispositions having no impact on the determination of a prior strike does not mean that the instant adjudication is not a qualifying offense or that sentencing provisions of the Three Strikes law are inapplicable during the calculation of the maximum commitment term. Rather, these "no impact" provisions potentially address the future impact of Barner's instant adjudication of guilt for assault with infliction of great bodily injury as a prior strike conviction for purposes of the Three Strikes law, should Barner commit a subsequent qualifying serious or violent felony.[2]

Nor are we persuaded that the provision in the Three Strikes law, which states "[t]here shall not be a commitment to any other facility other than the state prison," was meant to exclude the Three Strikes law from consideration while calculating the maximum term of commitment under section 1026.5. (See §§ 667, subd. (c)(4), 1170.12,

---

[2]    The People argue this section of the Three Strikes law merely prohibits future consideration of Barner's adjudication as a prior strike. In light of the fact that Barner was not convicted of the instant offense of assault with infliction of great bodily injury, such an exclusion is logical. However, this question is not before us.

subd. (a)(4).)  As an insanity acquittee, Barner was not sentenced under the Three Strikes law.  Rather, the Three Strikes law was simply used to calculate the longest term legally applicable to him had he been convicted and sentenced.

If the Legislature had wanted to provide some relief from a Three Strikes indeterminate term in setting a maximum term of commitment under section 1026.5, it could have done so when it last passed legislation relating to an insanity acquittee's maximum term of commitment, in light of changes to the Three Strikes law through Proposition 36, the Three Strikes Reform Act of 2012.[3]  In 2017, the Legislature passed Assembly Bill No. 103 (2017-2018 Reg. Sess.), which created section 1170.127.  Section 1170.127 allows insanity committees to petition the court for a reduction of their maximum term of commitment by arguing the nature of their instant adjudication, under the new law, only subjects them to a term commensurate with a second striker.  (See *People v. Steward* (2021) 63 Cal.App.5th 895, 899 [noting that Prop. 36 changed the length of prison sentences under the Three Strikes law for criminal defendants and, to allow insanity committees to take advantage of that change vis-a-vis their maximum term of commitment, the Legislature enacted Assem. Bill No. 103 (2017-2018 Reg. Sess.)].)  If successful in obtaining a reduced maximum term of commitment under section 1170.127, "the new term of confinement must provide opportunity to meet requirements provided in subdivision (b) of Section 1026.5" as prescribed by the statute.  (§ 1170.127,

---

[3]     The Three Strikes Reform Act of 2012 amended sections 667 and 1170.12 and changed the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment.  "Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence.  The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor.  In all other cases, the recidivist will be sentenced as a second strike offender.  (§§ 667, 1170.12.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.)

subd. (b).)  Thus, through section 1170.127, the Legislature specifically incorporated insanity acquittees into the Three Strikes Reform Act of 2012.[4]

The Legislature "is presumed to be aware of all laws in existence when it passes or amends a statute.  [Citations.]  ' "The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended." ' "  (*In re Greg F.* (2012) 55 Cal.4th 393, 407.)  Indeed, the very fact that the Legislature created section 1170.127 to allow insanity acquittees to petition to be committed for a term consistent with a second strike sentence as opposed to that of a third strike is an acknowledgment that the Three Strikes law applies to the maximum term calculation, sometimes resulting in a life-top commitment.

Barner concedes that in calculating the "longest term of imprisonment" under section 1026.5, the trial court is precluded from exercising any discretionary sentencing choices.  We agree.  He next argues that applying the Three Strikes law constituted a sentencing choice by the trial court, and was thus error.  Here we must part ways.  The trial court here found, in a bifurcated trial, that Barner suffered two prior strike convictions.  Accordingly, "the Three Strikes scheme would have required indeterminate life sentences." (*People v. Henderson* (2022) 14 Cal.5th 34, 44-45; see §§ 667, subd. (e)(2)(A); 667.5, subd. (c)(8); 1170.12, subds. (b)(1), (c)(2)(A).)  "*Romero* clarified that a sentencing court has discretion to dismiss findings as to prior convictions, in furtherance of justice, under the authority of section 1385, subdivision (a).  (See *Romero, supra,* 13 Cal.4th at pp. 507-532.)  The result of such a dismissal is that a defendant with two or

---

[4]     As Barner notes, the Legislature (also) specifically included insanity acquittees when it drafted section 1170.18, allowing the acquittees to petition a court to have certain felony offenses reduced to misdemeanors, consistent with changes made to the law through Proposition 47.  (*People v. K.P.* (2018) 30 Cal.App.5th 331, 340.)

more strike priors and a conviction for a new qualifying offense may be removed from the strictures of the Three Strikes scheme altogether if all of his strike priors are dismissed, or he may be sentenced as a 'second striker' if only one strike prior remains in connection with a newly charged qualifying offense." (*Henderson, supra*, at p. 45.) Thus, the initial applicability of the Three Strikes law is mandatory; any discretion in such application would stem from striking one or both prior strike convictions, which we address below.

We agree that section 1026.5 does not permit the sentencing court to make discretionary choices in calculating the maximum term of commitment, as if the acquittee were being sentenced. While the parties offer no definitive authority on the question, it appears a bright line is forming among appellate courts distinguishing between the use of mandatory sentencing laws (required) and discretionary choices (not allowed) in calculating the maximum commitment term under section 1026.5. For example, in *People v. Superior Court* (*Frezier*)*, supra*, 54 Cal.App.5th at pages 667-668, the appellate court concluded that section 1026.5, subdivision (a) requires the court to consider credit calculation statutes in setting the maximum term of commitment. Likewise, in *Hernandez I, supra*, 134 Cal.App.4th at pages 1237-1238, the appellate court held that statutory limitations on sentences, such as section 654 and the determinate sentencing law, apply equally to calculating maximum terms of commitment.[5]

However, section 1026.5 is a commitment statute, not a sentencing law. (See *People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1160.) The intent is to ensure that an insanity acquittee is not confined by reason of the adjudication of not guilty by reason of insanity any longer than an individual who is sane. (*In re Moye, supra*, 22 Cal.3d at

---

[5]     Because section 654 applies to maximum term commitments under section 1026.5, subdivision (a)(1), the parties agree that count two, battery resulting in serious bodily injury, was properly excluded from the term calculation.

13

p. 460.) It does not provide that the court should speculate as to what sentence a court *might actually impose* after conviction for the charged offenses. Rather, the maximum term of commitment is the maximum *possible* term, using the upper term, consecutive sentences, and all available enhancements without regard to any mitigating factors that might come into play if the court actually imposed a sentence after conviction. (See *People v. K.P., supra*, 30 Cal.App.5th at p. 340 [concluding that because an insanity acquittee is not sentenced, a court's discretion to strike a firearm enhancement pursuant to § 12022.53 does not apply to a § 1026.5, subd. (a) calculation]; cf *People v. Hernandez* (2000) 22 Cal.4th 512, 524 (*Hernandez II*) ["The only action that may be dismissed under Penal Code section 1385, subdivision (a), is a criminal action or a part thereof"].)[6] Section 1026.5 contemplates a simple arithmetic calculation with no exercise of discretion. (See also § 1026, subd. (e)(2) [tasking the committing court with a "computation or statement setting forth the maximum term of commitment in accordance with Section 1026.5"].) Thus, mandating consideration of required sentencing laws but disallowing consideration of discretionary sentencing choices in calculating the longest possible term of commitment is consistent with the plain language of the statute and is appropriate. The fact that the statute requires the court to select the upper term of the base offense in arriving at "the longest term of imprisonment" offers further support for our conclusion that the court, in making its commitment order under section 1026.5, subdivision (a)(1), does not analyze the individual circumstances of the case as it would were it called upon to impose a sentence.

Contrary to Barner's assertions, this does not lead to an absurd result, nor does it lead to automatic confinement for life. The Legislature has reasonably determined that a finding of not guilty by reason of insanity constitutes an adequate basis for hospitalizing

---

[6]    Here, in contrast, upon a finding of not guilty by reason of insanity, Barner "is no longer a criminal defendant." (*Lara, supra*, 48 Cal.4th at p. 222, fn. 5.)

an acquittee as a dangerous and mentally ill person for an amount of time equal to the term of imprisonment to which they would have been exposed had they been convicted and sentenced. The difference is that an insanity acquittee subject to a life-top maximum term of commitment is "entitled to release when he has recovered his sanity or is no longer dangerous." (*Jones, supra*, 463 U.S. at p. 368.)

When the trial court set the maximum term of commitment in this case, it considered whether to strike prior strike convictions and the five-year enhancements for prior convictions—discretionary choices that would have been available at sentencing. (See *People v. Carmony* (2004) 33 Cal.4th 367, 375 [a defendant may " 'invite the court' " to exercise its discretion to strike a prior conviction]; *People v. Ponder* (2023) 96 Cal.App.5th 1042, 1052 [dismissal of an enhancement is a discretionary determination as to whether doing so is in the furtherance of justice], review granted Jan. 10, 2023, S282925.) It ultimately struck one of Barner's five-year enhancements. In addition, the trial court did not include an otherwise mandatory three-year enhancement for the great bodily injury allegation the jury found true under section 12022.7. (See *People v. Romero* (2019) 44 Cal.App.5th 381, 390 ["The [great bodily injury] enhancement carries a mandatory three-year sentence [citation] but a trial court also has the discretion to strike the enhancement pursuant to section 1385"].) In doing so, the trial court erred in calculating the "longest term of imprisonment" required by section 1026.5, subdivision (a), by making discretionary choices reserved for an actual sentencing hearing. However, ultimately, the trial court ordered Barner committed to a state hospital for an indeterminate life term as the maximum term of commitment. As we shall explain, this was the correct maximum term. Any errors in language the trial court made during the commitment calculation were thus harmless.

Finally, we reject, in part, the People's invitation to correct the order of commitment to account for the three-year great bodily injury and additional five-year prior conviction enhancements not considered by the trial court in calculating the

maximum commitment term. According to the People, the order of commitment should be amended to reflect a 38 year-to-life term. Upon conviction, Barner would have been subject to a maximum term of 38 years to life. It is well-established, however, that indeterminate sentences such as 25 or 38 years to life, establish both a maximum term of life and a minimum term of confinement before an indeterminate sentence becomes eligible for parole consideration. (See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1078; *People v. Jefferson* (1999) 21 Cal.4th 86, 92-93.) Because Barner was not sentenced, he is not subject to a minimum term of confinement prior to parole consideration and the minimum sentence has no relevance. Barner's commitment to the state hospital does not depend on his serving a minimum term; he may be released from commitment should he regain his sanity. (See § 1026.2; *People v. Cross* (2005) 127 Cal.App.4th 63, 72 [acquittee committed for a term not to exceed life or until sanity is restored].)

Nevertheless, all parties are entitled to an explanation of how the court arrived at the maximum term. Indeed, the trial court was required to provide a statement setting forth its calculation of the maximum possible term. (See § 1026, subd. (e)(2) [when ordering a person committed to the state hospital, the court shall provide copies of, inter alia, the commitment order and a "computation or statement setting forth the maximum term of commitment"].) We conclude that, logically, this statement should include a list of all terms to which the insanity acquittee would have been exposed, had he or she been sentenced. In this case, the statement pursuant to section 1026, subdivision (e)(2) should reflect the terms for counts one and two, as well as all associated enhancement terms and alternative sentences, leading to the determination that the maximum term of commitment is life.

Accordingly, we conclude that a new statement should be submitted with an amended order of commitment. The accompanying statement or calculation of the maximum term shall list the maximum term associated with each offense. This includes for count one: a 25 year-to-life term for assault with force likely to produce great bodily

16

injury (§§ 245, subd. (a)(4), 667, subd. (e)(2), 667.5, subd. (c)(8), 1170.12, subds. (b)(1), (c)(2)(A)(ii)), with a three-year term for personal infliction of great bodily injury (§ 12022.7, subd. (a)), and a five-year prior conviction enhancement (§ 667, subd. (a)). For count two: a four-year term for battery by force resulting in serious bodily injury (§ 243, subd. (d)), stayed pursuant to section 654, plus a five-year prior conviction enhancement (§ 667, subd. (a)). The order of commitment must be amended to reflect a maximum commitment term of life.

II

Constitutional Challenges to a Life-top Term of Commitment

Barner claims that considering the Three Strikes law in setting the life-top term violated his rights to due process and equal protection. He argues that while he is subject to a commitment for life while he undergoes treatment, other insanity acquittees subject to the same treatment for a determinate term may be released, unless the state affirmatively proves that the acquittee is dangerous due to his or her mental disorder. We see no constitutional error.

### A. Legal Background

A finding of insanity is dispositive on the question of whether the accused is to be held criminally responsible for committing the charged offense. (*Hernandez II, supra*, 22 Cal.4th at p. 529 (conc. opn. of Brown, J.); *People v. Severance* (2006) 138 Cal.App.4th 305, 318; *People v. Jantz* (2006) 137 Cal.App.4th 1283, 1295.) "The acquittee has raised his mental illness as a defense to his criminal conduct and there has been an adjudication that he committed a criminal act and was legally insane when he did so." (*People v. Wilder* (1995) 33 Cal.App.4th 90, 105.) He "has demonstrated dangerousness by committing a criminal offense" (*ibid*), but the commitment of the defendant to a state hospital "is in lieu of criminal punishment and is for the purpose of treatment, not punishment." (*People v. Superior Court* (*Williams*) (1991) 233 Cal.App.3d 477, 485, disapproved of on other grounds in *Hudec v. Superior Court,*

17

*supra*, 60 Cal.4th at p. 828 & fn. 3.) "The purpose of committing an insanity acquittee is two-fold:  to treat his mental illness and to protect him and society from his potential dangerousness.  [Citation.]" (*Wilder, supra*, at p. 101.)

A person may be released from a state hospital:  (1) upon restoration of sanity pursuant to the provisions of section 1026.2; (2) upon expiration of the maximum term of commitment under section 1026.5, except as such term may be extended under the provisions of subdivision (b) of section 1026.5; or (3) upon approval of outpatient status pursuant to the provisions of section 1600 et seq. (§ 1026.1; see also *People v. Sword, supra*, 29 Cal.App.4th at p. 620).

Outpatient status is a prerequisite to a finding that sanity has been restored. (§ 1026.2, subd. (e).)  "Subdivision (e) of section 1026.2 sets up a two-step process for processing an application for release:  first, a determination of whether the applicant should be placed in a local program, and later, after a year in such a program, a determination of whether the applicant's sanity has been restored." (*Barnes v. Superior Court* (1986) 186 Cal.App.3d 969, 973; see *People v. Tilbury, supra*, 54 Cal.3d at p. 60 [no right to jury trial on outpatient placement].)  At the end of one year, the trial court may either discharge the defendant, order confinement in a treatment facility, or renew its approval of outpatient status.  (§ 1606.)  In a restoration of sanity hearing, the applicant has the burden to prove by a preponderance of the evidence that they are no longer a danger to others due to mental defect, disease, or disorder.  (§ 1026.2, subds. (e), (k); see *People v. Dobson* (2008) 161 Cal.App.4th 1422, 1433 (*Dobson II*).)

Under the second option, an insanity acquittee with a determinate maximum term may be released at the end of that term, unless the district attorney successfully petitions to extend the commitment because the patient presents a substantial danger of physical harm to others because of a mental disease, defect, or disorder.  (§ 1026.5, subd. (b)(1).) The patient is entitled to a jury trial on the petition (§ 1026.5, subd. (b)(3)), and section 1026.5, subdivision (b)(8) limits each extension of commitment to a two-year period.  In

order for the confinement (based on a felony) to be extended, the prosecution must show beyond a reasonable doubt that "by reason of a mental disease, defect, or disorder [the person] represents a substantial danger of physical harm to others." (§ 1026.5, subd. (b)(1); see *People v. Buttes* (1982) 134 Cal.App.3d 116, 125.) Two conclusions are drawn from the plain language of section 1026.5, subdivision (b). The statute does not primarily function as a release statute. Rather, it provides the government the ability to involuntarily confine the individual past the maximum term, based on dangerousness resulting from the individual's mental disorder. Next, subdivision (b) of section 1026.5 does not apply to insanity acquittees subject to a life term of commitment.

### B. Due Process

Citing to *Ulster County Court v. Allen* (1979) 442 U.S. 140, 157 and *People v. Castro* (1985) 38 Cal.3d 301, 313, Barner contends a life-top maximum term of commitment violates his due process rights because use of his two prior strike convictions to set a life-top term creates an irrational presumption that to protect the public from him, he must be committed for life. Barner posits that he should be considered for release on the same time frame as those who commit the same offenses and receive a determinate term of commitment. He argues that his continued commitment until he proves his sanity violates due process because the state is relieved from having to prove the requirements under section 1026.5, subdivision (b), which it must do for an insanity acquittee committed to a determinate term. We disagree.

"A 'root requirement' of due process is that an individual be given an opportunity for a hearing before being deprived of any significant liberty or property interest." (*Lara, supra*, 48 Cal.4th at p. 229.) Indeed, " 'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.' " (*Jones, supra*, 463 U.S. at p. 361, quoting *Addington v. Texas* (1979) 441 U.S. 418, 425.) However, due process does not call for the same procedures in every situation. Instead, " '[d]ue process

19

is flexible and calls for such procedural protections as the particular situation demands.' " (*Jones, supra*, at pp. 367-368, quoting *Morrissey v. Brewer* (1972) 408 U.S. 471, 481.)

Barner's due process challenge was essentially rejected by the United States Supreme Court in *Jones, supra*, 463 U.S. 354. In that case, the court held that due process is not violated when an insanity acquittee may be hospitalized for a period longer than the determinate term otherwise associated with the appropriate sentence for his or her offenses, even when compared to civil commitment procedures, which require proof of the need for commitment under a higher burden. (*Id*. at pp. 366-368.) In *Jones*, the Supreme Court upheld a District of Columbia statute that required a defendant who was acquitted by reason of insanity, and committed to a mental institution, to prove that he was no longer insane or dangerous by a preponderance of the evidence in order to be released. In that case, the defendant was hospitalized for a longer period than he would have served in prison if convicted. (*Jones, supra*, 463 U.S. at p. 368.)

The Supreme Court found that "a finding of not guilty by reason of insanity is a sufficient foundation for commitment of an insanity acquittee for the purposes of treatment and the protection of society." (*Jones, supra*, 463 U.S. at p. 366.) The fact of conviction was also sufficient evidence that the defendant was dangerous. Under the District of Columbia statute, as under ours, the defendant had the opportunity to show, after a period of time, that he had recovered, and therefore should be released. (*Id.* at pp. 364-366.)

The high court next held that the preponderance of the evidence standard met due process requirements, stating, "We hold that when a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." (*Jones, supra*, 463 U.S. at p. 370; cf. *O'Connor v.*

*Donaldson* (1975) 422 U.S. 563, 575 [civil commitment requires both mental illness and dangerousness].)

Under *Jones*, California may use the findings in the criminal proceeding as the basis for commitment on grounds that those findings show both insanity and dangerousness. (§ 1026.) "[T]he fact of the criminal conviction provides a basis for inferring that defendant is both mentally ill and dangerous, and may therefore be committed" and "there is [also] a presumption of continued insanity." (*People v. Sword, supra*, 29 Cal.App.4th at p. 624.) This is a rebuttable presumption. Barner may prove his sanity by showing, generally at the end of one year in an outpatient program, that he is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder. (§ 1026.2, subd. (e); see *Dobson II, supra*, 161 Cal.App.4th at p. 1433; *People v. Endsley, supra*, 28 Cal.App.5th at p. 101 [restoration of sanity under § 1026.2 is the only route to release where the longest term of imprisonment is for life].)

In general, a mandatory rebuttable presumption tells the trier of fact that, if a specified fact has been proven, then the trier of fact must find that a specified factual element of the crime has also been proven, unless the defendant comes forward with evidence to rebut the presumed connection between the two facts. (*Ulster County Court v. Allen, supra*, 442 U.S. at p. 157.) Mandatory rebuttable presumptions raise due process concerns in a criminal case "since the prosecution bears the burden of establishing guilt beyond a reasonable doubt. ([*Ibid.*]) The prosecution 'may not rest its case entirely on a [mandatory rebuttable] presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt.' (*Id.* at p. 167.)" (*People v. McCall* (2004) 32 Cal.4th 175, 183.)

Here, the presumption of dangerousness is a consequence of Barner's commission of the offenses, rather than an evidentiary presumption to be considered during the guilt phase, so it does not carry the same due process concerns as described in *Ulster County* or *Castro*. (See *People v. Castro, supra*, 38 Cal.3d at p. 313 [due process demands that

21

even inferences—not just presumptions—be based on a rational connection between the fact proved and the fact to be inferred].)  Instead, the presumption of ongoing insanity—and therefore dangerousness—was created after the jury determined beyond a reasonable doubt that Barner committed the acts of violence but, by a preponderance of the evidence, he was legally insane when he did so.

Barner's contention is that this presumption should not continue indefinitely, especially when other insanity acquittees, whose term is calculated as a determinate term, may be released unless the state proves, beyond a reasonable doubt, that he or she is still dangerous as a result of his or her mental illness.  First, *Jones* rejected the notion that there is a correlation between the length of the acquittee's hypothetical criminal sentence and the length of time necessary for his or her recovery.  (*Jones, supra*, 463 U.S. at p. 368.)  Rather, *Jones* instructs that "[t]he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous."  (*Ibid*.; see also *Lara, supra*, 48 Cal.4th at p. 228 [cautioning that the expectation of release after the maximum term is a "secondary benefit" not to be elevated "over the fundamental purposes of the [not guilty by reason of insanity] provisions, to ensure that needed treatment is provided and the public protected" as "such an interpretation would run counter to the very purposes of the [not guilty by reason of insanity] statutes and the provision for extension of commitment"]; cf. *Foucha v. Louisiana* (1992) 504 U.S. 71, 77 [an indefinite civil commitment is consistent with due process if the statute provides fair and reasonable procedures to ensure that the person is held "as long as he is both mentally ill and dangerous, but no longer"].)  Because it is impossible to predict whether, or how long it will take for, an individual to recover his or her sanity, due process allows an indeterminate term of commitment based on a finding of not guilty by reason of insanity and subject to periodic review of the acquittee's suitability for release.  (*Jones, supra*, at p. 368.)

Next, a third striker like Barner may rationally be presumed to be dangerous for a longer period of time than someone who is not a third striker because he has demonstrated his dangerousness with repeat commissions of serious and/or violent felonies. This reasoning is consistent with case law. (See *Jones, supra*, 463 U.S. at pp. 364, 366 ["The fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness" and "[i]t comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment"]; see also *People v. Beck* (1996) 47 Cal.App.4th 1676, 1684 ["an acquittal by reason of insanity entails a finding that the defendant in fact committed a criminal offense," and "commission of the crime in turn supports an inference of potential dangerousness and possible continuing mental illness [citation], which justifies the state in exercising great care in evaluating the offender prior to release into the community"].)

Here, Barner had a trial in two phases and stipulated, in a separate hearing, that commitment to the state hospital was necessary due to his ongoing insanity. As he put forth insanity as a defense and proved his criminal act was a product of his mental illness, any concern as to the risk of error at this stage is diminished. (*Jones, supra*, 463 U.S. at p. 367.) In addition, an indeterminate term of commitment bears a rational relation to the purpose of treatment and restoration of sanity. (*Id*. at p. 368.) Thus, due process was satisfied at the initial commitment. With respect to Barner's ongoing commitment until he can prove his sanity, we see no due process error. Although we cannot predict an insanity acquittee's recovery rate, the statute provides for periodic updates and an opportunity for release upon restoration of sanity. Because there is assurance that every acquittee has an opportunity to obtain release, due process is satisfied. (See *Jones, supra*, at p. 366 ["The precise evidentiary force of the insanity acquittal, of course, may vary from case to case" but due process does not demand classifications that fit every individual with the same degree of relevance].)

We conclude an indeterminate life term of commitment does not violate due process.

### C. Equal Protection

Barner next asserts a life-top term of commitment deprives him of his right to equal protection because he must remain in physical custody until his sanity is restored, even if he does not represent "a substantial danger of physical harm to others" within the meaning of 1026.5, subdivision (b)(1), whereas an insanity acquittee with a determinate term of commitment may be released from physical custody at the termination of their term if they does not represent a substantial danger to others. We disagree.

First, Barner forfeited his equal protection claim by not asserting it in the trial court. (See *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14 [the defendant's failure to raise his equal protection claim in the trial court forfeited the argument]; *People v. Rogers* (2006) 39 Cal.4th 826, 854 [holding as to equal protection and other constitutional claims, the "defendant forfeited each of these claims by failing to raise them at trial"]; *People v. Dunley* (2016) 247 Cal.App.4th 1438, 1447 ["an equal protection claim may be forfeited if it is raised for the first time on appeal"].) Even if not forfeited, it has no merit.

" ' "The equal protection guarantees of the Fourteenth Amendment and the California Constitution are substantially equivalent and analyzed in a similar fashion." ' " (*People v. Noyan* (2014) 232 Cal.App.4th 657, 666.) " 'Equal protection requires the state to treat similarly situated persons alike, with some exceptions in which the disparate treatment is sufficiently related to the purpose of the [law] in question.' [Citation.] The equal protection clause applies to civil commitment statutes 'to ensure that a particular group of civil committees is not unfairly or arbitrarily subjected to greater burdens.' " (*People v. Bocklett* (2018) 22 Cal.App.5th 879, 892.)

Our California Supreme Court has recognized that at its core, " 'equal protection ensures that the government does not treat a group of people unequally without some

justification.' " (*People v. Hardin* (Mar. 4, 2024, S277487) __ Cal.5th ___, ___ [2024 Cal. Lexis 1076, at *20-*21].)  In light of this, the court recently modified our equal protection analysis as follows:  "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question.  The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review.  The burden is on the party challenging the law to show that it is not." (*Id*. at p. *28.)  The degree of justification required to satisfy equal protection depends on the type of unequal treatment at issue.  When a challenged statute involves a suspect classification such as race, or a fundamental right such as the right to vote, courts will apply a heightened scrutiny and will demand greater justification for the differential treatment.  (*Id.* at p. *21.)  Where the challenged statutes involve neither a suspect classification nor a fundamental right, the " 'general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.' " (*Ibid*., citing *Cleburne v. Cleburne Living Center, Inc*. (1995) 473 U.S. 432, 440.)  Here, Barner's equal protection challenge fails because there is a rational basis for different treatment among insanity acquittees.

Relying on *People v. Olivas* (1976) 17 Cal.3d 236, Barner argues that in determining whether the differential treatment of insanity acquittees subject to life or determinate terms of commitment is justified, we should apply the strict scrutiny standard of review, under which "the state must first establish that it has a compelling interest which justifies the law and then demonstrate that the distinctions drawn by the law are necessary to further that purpose." (*Id*. at p. 251, italics omitted.)  He claims that strict scrutiny is appropriate because applying the Three Strikes law to calculate a life-top term of commitment affects his personal liberty—a fundamental interest.  (See *Olivas*, at

p. 251 [determining that personal liberty is a fundamental interest and that strict scrutiny applied to the challenged classification].)

The California Supreme Court has explained that *People v. Olivas, supra*, 17 Cal.3d 236 should not be read as requiring strict scrutiny review "whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes."[7] (*People v. Wilkinson* (2004) 33 Cal.4th 821, 837; see *People v. Flores* (1986) 178 Cal.App.3d 74, 88 [an appellant does not have a fundamental interest in a specific term of imprisonment].) Rather, where the issue is not whether a deprivation of an individual's liberty will occur, but rather the duration of that deprivation, rational basis review is appropriate because " ' " 'the power to define crimes and fix penalties is vested exclusively in the legislative branch.' " ' " (*People v. Farley* (2009) 46 Cal.4th 1053, 1119.) Accordingly, we find that the rational basis standard applies because the issue here is the duration of the commitment period, not whether insanity acquittees will be deprived of their liberty.

Under the rational basis standard, " 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' [Citation.] . . . To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.) Barner has not met his burden to negate every conceivable basis for treating him, a recidivist offender, differently from nonrecidivist offenders during committal under section 1026.5.

---

[7]     Although our high court refers to "sentencing," because the maximum commitment term is calculated as the longest term of imprisonment, the Supreme Court's caution applies in this context.

26

Moreover, Barner's equal protection argument essentially duplicates his due process argument. *Jones* instructs that if the due process clause does not require that an insanity acquittee be given the particular procedural safeguards provided to a different set of acquittees, then there necessarily is a rational basis for equal protection purposes for distinguishing between civil commitment and commitment of insanity acquittees. (*Jones, supra*, 463 U.S. at p. 363, fn. 10.) We conclude that the Legislature could rationally distinguish between insanity acquittees who have demonstrated a higher degree of dangerous antisocial behavior through recidivism with a life-top term and those nonrecidivist acquittees with a determinate term of commitment. Accordingly, we discern no equal protection violation. (Cf. *People v. K.P., supra*, 30 Cal.App.5th at pp. 341-345 [finding a rational basis exists for the Legislature's failure to apply § 12022.53 to insanity acquittees and thus no equal protection violation].)

III

Multiple Adjudications of Guilt Based on the Same Conduct

Barner contends his adjudication of guilt on count one for assault with force likely to cause great bodily injury must be reversed because it is a lesser included offense to count two, battery causing serious bodily injury. We disagree.

"Under section 954, as [the Supreme Court has] interpreted it, 'a defendant properly may be convicted of two offenses if neither offense is necessarily included in the other, even though under section 654 he or she could not be punished for more than one offense arising from the single act or indivisible course of conduct.' " (*People v. Vidana* (2016) 1 Cal.5th 632, 637.) " 'The most reasonable construction of the language in section 954 is that the statute authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' " (*Id.* at p. 650.) Thus, section 954 permits multiple convictions based on the same conduct except when the convictions rest on different statements of the same offense or when a statement of one

27

offense is necessarily included within another.  We review the application of section 954 de novo.  (*People v. Villegas* (2012) 205 Cal.App.4th 642, 646.)

Barner contends that because battery is a consummated assault, the assault is necessarily included in the battery.  (See *People v. Corning* (1983) 146 Cal.App.3d 83, 90 ["Felony battery is a consummated assault"].)  However, the relationship of simple assault and battery is not analogous to assault with force likely to produce great bodily injury and battery inflicting serious bodily injury.  The test for determining whether one offense is necessarily included within another requires us to examine the statutory elements of the offenses.  "[I]f the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former."  (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.)  Enhancements may not be considered for purposes of identifying lesser included offenses.  (*People v. Sloan* (2007) 42 Cal.4th 110, 123.)

The statutory elements of felony battery are:  (1) a battery, that is, "any willful and unlawful use of force or violence upon the person of another" (§ 242); and (2) serious bodily injury is inflicted on the person (§ 243, subd. (d)).  (*People v. Longoria* (1995) 34 Cal.App.4th 12, 16.)  The statutory elements of assault with force likely to produce great bodily injury are:  (1) an assault, that is, "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" (§ 240); and (2) committed "by any means of force likely to produce great bodily injury" (§ 245, subd. (a)(4)).  (*People v. Murray* (2008) 167 Cal.App.4th 1133, 1139.)

As stated in *People v. Bertoldo* (1978) 77 Cal.App.3d 627, the two offenses have different elements.  "Section 245, subdivision (a), specifically addresses the *conduct* of a defendant by prohibiting an attack upon another person.  In contrast, section 243 addresses the *result* of conduct . . . .  Thus, one may conceivably commit a felony battery without committing an aggravated assault.  For example, a push that results in a fall and concomitant serious injury may not be sufficient deadly force to permit successful

28

prosecution under section 245, subdivision (a). However, it is triable as a felony battery." (*Id.* at pp. 633-634, italics added.) In short, because a battery inflicting serious bodily injury does not require use of a weapon or force likely to cause such serious injury, aggravated assault (a violation of § 245, subd. (a)) is not a lesser included offense of battery causing serious injury (a violation of § 243, subd. (d).) (*In re Ronnie N.* (1985) 174 Cal.App.3d 731, 735; cf. *People v. Corning, supra*, 146 Cal.App.3d at p. 90 [rejecting the defendant's sentencing challenge "because it erroneously assumes his aggravated assault/great bodily injury offense is equivalent to felony battery"].)

Indeed, as Barner acknowledges, existing case law has rejected his argument, largely relying on the analysis explained above. (See *In re Ronnie N., supra*, 174 Cal.App.3d at pp. 733-735; *In re Jose H.* (2000) 77 Cal.App.4th 1090, 1095-1096;[8] cf. *People v. Hopkins* (1978) 78 Cal.App.3d 316, 319-320 [§§ 245 & 243 "do not cover the same subject matter"]; *People v. Bertoldo, supra*, 77 Cal.App.3d at p. 633 ["one may conceivably commit a felony battery without committing an aggravated assault"].) We find these authorities persuasive and agree that "[a]ssault with force likely to produce great bodily injury is not a lesser included offense of battery with serious bodily injury." (*In re Jose H., supra*, at pp. 1095-1096.) Accordingly, Barner was properly found guilty of each offense.

---

[8]     We disagree that the reasoning in *In re Jose H., supra*, 77 Cal.App.4th 1090 should be disregarded because it relied upon the statement in *Corning* that "[f]elony battery is a consummated assault," yet reached a result inconsistent with that statement. (*People v. Corning, supra*, 146 Cal.App.3d at p. 90.) In *Corning*, the court also disagreed that aggravated assault and felony battery were equivalent offenses, even when considering a great bodily injury finding attached to an aggravating assault conviction. (*Ibid.*) Thus, we agree with the People that *Corning* provides support for the ultimate conclusion in *In re Jose H.* Moreover, our Supreme Court has examined the reasoning of *In re Jose H.*, cited its conclusion with approval, and followed it to resolve a somewhat different issue. (See *People v. Sloan, supra*, 42 Cal.4th at pp. 119-120.)

29

# DISPOSITION

The judgment is modified to reflect that Barner's maximum term of commitment is life.  The trial court is directed to prepare an amended commitment to the state hospital reflecting a maximum commitment of life.  The statement or calculation of the maximum term shall list the maximum term associated with each offense, consistent with this opinion.  In all other respects, the judgment is affirmed.


           /s/          
EARL, P. J.

We concur:


    /s/       
KRAUSE, J.


    /s/       
WISEMAN, J. [*]

---

[*]    Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.